## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

PHL VARIABLE INSURANCE COMPANY,

        Plaintiff,

v.

PRICE DAWE 2006 INSURANCE TRUST, by and through its trustee, CHRISTIANA BANK AND TRUST COMPANY, and PRICE DAWE IRREVOCABLE LIFE INSURANCE TRUST, by and through its trustee, CHRISTOPHER S. HAMMATT

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No.: 10-964-BMS

---

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT PRICE DAWE 2006 INSURANCE TRUST'S MOTION TO DISMISS COMPLAINT

ASHBY & GEDDES
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*PHL Variable Insurance Company*

*Of Counsel*:
Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, McDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

Dated: February 28, 2011

{00492106;v1}

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ........................................................................ 1

II.     STATEMENT OF RELEVANT FACTS.................................................... 3

   A.   The Death of the Insured and Competing Claims for the Policy Proceeds ........... 4

   B.   Phoenix's Discovery That the Policy Was Procured Through a STOLI Scheme . 4

III.    NATURE OF THE MOTION AND SUMMARY OF ARGUMENT.................. 5

IV.     ARGUMENT .................................................................................................... 7

   A.   Standard of Review ............................................................................. 7

   B.   Public Policy Mandates That This Policy is Void *Ab Initio*................................. 8

      1.   Public Policy and Law Preclude "Wagering Contracts" ..................................... 8

      2.   Incontestability Provisions Do Not Apply to Wagering Contracts that Are
           Void *Ab Initio* ...................................................................................... 10

   C.   The Court Should Not Dismiss the Complaint for Interpleader.......................... 16

V.      CONCLUSION ............................................................................................... 17

# TABLE OF AUTHORITIES

### Cases

*Atkinson v. Wal-Mart Stores, Inc.,* 2009 WL 1458020 (M.D. Fla. May 26, 2009) ...................... 12

*Baltimore Life Ins. Co. v. Floyd,* 28 Del. 201 (Del. 1914) ............................................................ 8

*Beard v. Am. Agency Life Ins. Co.,* 550 A.2d 677 (Md. 1988) ........................................ 11, 12, 15

*Brett v. Warnick,* 75 P. 1061 (Or. 1904) ...................................................................................... 13

*Bromley's Adm'r v. Washington Life Ins. Co.,* 92 S.W. 17 (Ky. 1906) ........................................ 12

*Brown v. Mass. Casualty Ins. Co.,* 1995 U.S. App. LEXIS 23779 (9th Cir. Aug. 8, 1995) ......... 11

*Buckner v. Ridgely Protective Ass'n,* 229 P. 313 (Wash. 1924) .................................................... 13

*Carter v. Cont'l Life Ins. Co.,* 115 F.2d 947 (D.C. Cir. 1940) ...................................................... 12

*Chamberlain v. Butler,* 86 N.W. 481 (Neb. 1901) ........................................................................ 13

*Charbonnier v. Chicago Nat'l Life Ins. Co.,* 266 Ill. App. 412 (1932) ........................................ 12

*Commonwealth Life Ins. Co. v. George,* 28 So. 2d 910 (Ala. 1947) ............................................ 11

*Crismond's Adm'x v. Jones,* 83 S.E. 1045 (Va. 1915) ................................................................... 13

*Cronin v. Vermont Life Ins. Co.,* 40 A. 497 (R.I. 1898) ................................................................ 13

*Draper v. Del. State Grange. Mut. Fire Ins. Co.,* 91 A. 206 (Del. Super. Ct. 1914) .................... 10

*Farmers Butter and Dairy Co-op. v. Farm Bureau Mut. Ins. Co.,* 196 N.W.2d 533 (Iowa 1972) 12

*Fuller v. Metropolitan Life Ins. Co. of N.Y.,* 41 A. 4, 15 (Conn. 1898) ........................................ 12

*Goodwin v. Fed. Mut. Ins. Co.,* 180 So. 662 (La. Ct. App. 1938) ................................................ 12

*Guarantee Trust Life Ins. Co. v. Wood,* 631 F. Supp. 15 (N.D. Ga. 1984) .................................. 16

*Harris v. Sovereign Camp,* 1940 WL 2917 (Ohio Ct. App. Feb. 19, 1940) ................................. 12

*Henderson v. Life Ins. Co. of Va.,* 179 S.E. 680 (S.C. 1935) ........................................................ 12

*Hilliard v. Jacobs,* 874 N.E.2d 1060 (Ind. Ct. App. 2007) ........................................................... 12

*Home Life Ins. Co. v. Masterson,* 21 S.W.2d 414  (Ark. 1929)...................................................... 12

*Ill. State Bar Assoc. Mutual Ins. Co. v. Coregis Ins. Co.,* 821 N.E.2d 706 (Ill. App. Ct. 2004) .. 10

*John Hancock Life Ins. Co. v. Rubenstein,* No. 09-21741-CIV-UNGARO (S.D. Fla. Sept. 1, 2009) ................................................................................................................................ 11

*Kentucky Cent. Life Ins. Co. v. McNabb,* 825 F. Supp. 269 (D. Kan. 1993) ................................ 11

*Kramer v. Phoenix Life Ins. Co.,* 15 N.Y.3d 539 (N.Y. 2010) ...................................................... 14

*Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust,* No. 09-506-GMS, 2010 WL 2898315 (D. Del. July 20, 2010)........................................................................................ 2

*Lowe v. Rennert,* 869 S.W.2d 199 (Mo. Ct. App. 1993)................................................................ 12

*Mark IV Indus. Corp. v. Transcore, L.P.,* 2009 U.S. Dist. LEXIS 112069 (D. Del. Dec. 2, 2009) 7

*Mechanic's Nat'l Bank v. Comins,* 55 A. 191 (N.H. 1903) ............................................................ 13

*Minnesota Mutual Life Ins. Co v. Ricciardello,* 1997 WL 631027 (D. Conn. Sept. 17, 1997) .... 11

*Mohr v. Prudential Ins. Co.,* 78 A. 554 (R.I. 1911)........................................................................ 13

*National Life & Acc. Ins. Co. v. Ball,* 127 So. 268 (Miss. 1930).................................................. 12

*New England Mut. Life Ins. Co. v. Caruso,* 535 N.E. 2d 270 (N.Y. 1989) ............................ 13, 14

*New Testament Baptist Church Inc. of Miami v. State,* 993 So. 2d 112 (Fla. Dist. Ct. App. 2008) ........................................................................................................................................ 10

*Obartuch v. Security Mut. Life Ins. Co.,* 114 F.2d 873 (7th Cir. 1940) ........................................ 11

*Paul Revere Life Ins. Co. v. Fima,* 105 F.3d 490 (9th Cir. 1997)................................................. 11

*Pearson v. Chugach Gov't Servs.,* 2009 U.S. Dist. LEXIS 103861 (D. Del. Nov. 6, 2009) .......... 7

*Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust,* No. 08-488-MPT, 2010 WL 3395661 (D. Del. Aug. 30, 2010) ................................................................................ 2, 6, 8

*Stevens v. Woodmen of the World,* 71 P.2d 898 (Mont. 1937) ...................................................... 12

*Sun Life Assur. Co. of Canada v. Moran,* 2009 U.S. Dist. LEXIS 76289 (D. Ariz. Aug. 11, 2009)
.................................................................................................................................... 12

*Travelers Cas. & Sur. Co. of Am. v. Bancorp Bank,* 691 F. Supp. 2d 531 (D. Del. 2009) ............. 7

*United Sec. Life Ins., Etc., Co. v. Brown,* 113 A. 443 (Pa. 1921) ................................................. 13

*Warnock v. Davis,* 104 U.S. 775 (1881) ........................................................................................ 8

*Washington v. Atlanta Life Ins. Co.,* 136 S.W.2d 493 (Tenn. 1940) ........................................... 13

*Werenzinski v. Prudential Ins. Co. of America,* 14 A.2d 279 (Pa. 1940) ................................... 13

*Wharton v. Home Sec. Life Ins. Co.,* 173 S.E. 338 (N.C. 1934) ................................................. 13

*Wood v. New York Life Ins. Co.,* 336 S.E.2d 806 (Ga. 1985) ...................................................... 12

### Statutes

18 Del. C. § 2704(a) (2010) ......................................................................................................... 15

36 Okl St. Ann. § 4055.2 ............................................................................................................... 9

A.K.S. § 20-443.02 ........................................................................................................................ 9

Alaska Stat. § 21.42.090(2) (2007) ............................................................................................... 9

Ariz. Rev. Stat. Ann. § 20- 1104(A)-(C) (2007) ........................................................................... 9

Ark. Code Ann. § 23-79-103 (West 2010) .................................................................................... 9

Cal. Ins. Code §§ 280, 10110 (West 2010) ................................................................................... 9

Conn. Gen. Stat. § 38a-465 ........................................................................................................... 9

Ga. Code Ann. § 33-24-3 (West 2010) ......................................................................................... 9

H.R.S. § 431E-2 ............................................................................................................................. 9

Hi Rev. Stat. § 431:10-204 (2007) ................................................................................................ 9

I.C.A. § 508K.2 .............................................................................................................................. 9

Idaho Code Ann. § 41-1804 (2007) .............................................................................................. 9

IN CODE § 27-8-19.8-7.8 ............................................................................................ 9

K.R.S. § 304-15-020 .................................................................................................. 9

K.S.A. § 40-5002 ...................................................................................................... 9

KY. REV. STAT. ANN. §§ 299.150, 304.14-040 (West 2010) .......................................... 9

LA R.S. § 22:195 ...................................................................................................... 9

LA. REV. STAT. ANN. §22:901 (West 2010) ................................................................. 9

M.R.S.A. § 6802 ........................................................................................................ 9

MD CODE ANN. INS. § 12-201 (West 2010) ................................................................. 9

MD. CODE ANN., INS. Art. 48A, §366(a) .................................................................... 15

MD. CODE ANN., INS. Art. 48A, §390 ........................................................................ 15

ME. REV. STAT. ANN. § 2404 (2007) ........................................................................... 9

MI. COMP. LAWS ANN. § 500.2211 (West 2010) .......................................................... 9

MISS. CODE ANN. § 83-5-251 (West 2010) ................................................................... 9

MONT. CODE ANN. § 33-15-201 (2010) ........................................................................ 9

N.D. CENT. CODE §26.1-29-04 (West 2010) ................................................................. 9

N.J. STAT. ANN. § 17B:24-1.1 (West 2010) ................................................................. 9

N.M. STAT. ANN. § 59A-18-4 (West 2010) ................................................................. 9

N.Y. INS. LAW §3205(B)(McKinney2007) .................................................................. 14

NDCC 26.1-33.3-10 ................................................................................................... 9

NEB. REV. ST. § 44-1110 ............................................................................................. 9

NEV. REV. STAT. ANN. §687B.040 (West 2010) ............................................................ 9

NY Ins. Law § 7815 .................................................................................................. 14

NY Ins. Law §7813 .................................................................................................... 1

OKLA. STAT. ANN. Tit. 36, §3604 (West 2010) ................................................................... 9

R.C. § 3916.16 .................................................................................................................. 9

R.I. GEN. LAWS §27-4-27 (West 2010) ............................................................................... 9

S.D. CODIFIED LAWS § 58-10-4 ......................................................................................... 9

UTAH CODE ANN. § 31A-21-104 (West 2010) .................................................................... 9

VA. CODE ANN. § 38.2-301 (West 2010) ............................................................................ 9

W. VA. CODE ANN. § 33-6-2 (West 2010) .......................................................................... 9

WASH. REV. CODE ANN. §48.18.030 (West 2010) ............................................................. 9

WVA. CODE ANN.  § 33-J3C-1I ......................................................................................... 9

WYO. STAT. ANN. § 26-15-102 (West 2010) ...................................................................... 9

Plaintiff PHL Variable Insurance Company ("Phoenix") respectfully submits this brief in opposition to the motion to dismiss filed by Defendant the Price Dawe 2006 Insurance Trust ("Trust") by and through its trustee, Wilmington Savings Fund Society, FSB (the "Trustee") as successor in interest to Christiana Bank & Trust Company.

## I.   PRELIMINARY STATEMENT

Phoenix brought this action seeking rescission of a life insurance policy (the "Policy") fraudulently obtained as part of a prohibited stranger owned life insurance ("STOLI") scheme involving, among others, Christiana Bank & Trust Company ("Christiana"), Life Equity, LLC ("Life Equity") and the GIII Accumulation Trust ("GIII"). Phoenix seeks rescission on the basis that the Policy is void *ab initio* due to violation of the public policy prohibiting wagering contracts and due to a lack of insurable interest. In its Opening Brief in Support of its Motion to Dismiss Complaint (the "Motion" [D.I. 11]), the Trust does not challenge the sufficiency of the factual allegations set forth in Phoenix's Complaint. Rather, the Trust asserts that Phoenix's rescission is barred as a matter of law because Phoenix filed its Complaint [D.I. 1] after the expiration of the Policy's two year contestability period. The crux of the Trust's argument is that because the Delaware Supreme Court has not ruled on this exact issue, the Court should simply adopt the holding from a single, outdated New York case[1] and disregard the countervailing opinion of the overwhelming majority of jurisdictions.

---

[1] The New York legislature enacted specific anti-STOLI legislation in 2009. In relevant part those laws prohibit "stranger-originated life insurance," defined as "any act, practice or arrangement, at or prior to policy issuance, to initiate or facilitate the issuance of a policy for the intended benefit of a person who, at the time of policy origination, has no insurable interest in the life of the insured under the laws of this state." *See* NY Ins. Law § 7815. In addition, New York now prohibits the sale of life insurance policies until two years after issuance. *See id.* §7813.

Seven months ago, in a case involving both Christiana and Life Equity, this Court expressly rejected this exact same argument. *See Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, No. 09-506-GMS, 2010 WL 2898315, at *6 (D. Del. July 20, 2010). In an opinion issued by Chief Judge Sleet, this Court carefully examined case law across numerous jurisdictions, including the New York case relied upon by the Trust, and determined that, "[b]ecause the issue is a question of law and plaintiff [insurer] has stated a legally cognizable claim that the Schlanger Policy was void ab initio for lack of insurable interest . . . dismissal is not appropriate . . ." *Schlanger*, 2010 WL 2898315, at *6. Just as in *Schlanger*, Phoenix has set forth a legally cognizable claim that the Policy is void *ab initio* due to lack of insurable interest.

Indeed, in a separate ruling on a motion for summary judgment one month after the *Schlanger* opinion was issued, this Court determined that a life insurance policy issued pursuant to the STOLI scheme promoted by GIII and Christiana is, in fact, void due to a lack of insurable interest. *See Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, No. 08-488-MPT, 2010 WL 3395661, at *4–5 (D. Del. Aug. 30, 2010) (holding that a life insurance policy issued to a trust for whom Christiana acted as the trustee was void where the insured "intended to sell the beneficial interest in the Policy at the time it was procured" and indeed transferred the beneficial interest to GIII shortly after issuance of the policy).

Although this Court should, as it did in *Schlanger*, deny the Trust's motion to dismiss and postpone until the summary judgment phase or trial a determination of whether Phoenix is entitled to rescind the Policy, should the Court choose to rule on the issue at this stage, it is abundantly clear from a review of the relevant law that the Policy's incontestability clause does not bar Phoenix from asserting that the Policy is void *ab initio* as an illegal wagering contract lacking the required insurable interest.

2

## II.   <u>STATEMENT OF RELEVANT FACTS</u>

Phoenix alleges that the Trust was created and utilized as part of a STOLI scheme, whereby a large face amount life insurance policy insuring an elderly individual is procured with the intent of immediately selling the beneficial interest in that policy on the secondary life insurance market.   The Trust, in connection with others, procured a $9,000,000 insurance policy for the purpose of illegally wagering on the life of Price Dawe ("Dawe") for the benefit of third-party investors who had no insurable interest in Dawe's life.   (*See* Compl. ¶¶ 21–22).

On or about December 4, 2006, a written life insurance application (the "Application") was submitted to Phoenix.   (*See* Compl. ¶¶ 23, 29.)   The Application identified the Trust as the proposed owner and sole beneficiary of the applied for policy.   (*Id.* at ¶ 23.)   The Application represented to Phoenix that Dawe, age 72, had a net worth of $14,000,000 and annual income totaling $506,000.   (*Id.* at ¶ 25.)   In other words, Dawe was financially qualified for and had a legitimate need for life insurance.   The Application also represented that there was no intention that any third-party would obtain any right, title or interest in the applied-for policy, and that there was no financing method being utilized to pay the premiums in order to facilitate a current or future transfer or assignment with respect to the benefits of the applied-for policy.   Along with the Application, Dawe and the Trust executed Statement of Client Intent Forms (the "SOCI"), which represented that the Policy was sought for legitimate insurance purposes, that premiums would not be financed, that the funds used to pay the premiums would be contributed by the Trust, that the Policy was not being purchased with the intent of being transferred within the first five years of issuance, that there was no understanding or agreement that the Policy would be sold and/or transferred to a third-party, and that neither Dawe nor any related individual or entity would receive any money or other inducement in connection with the Application for the policy.

3

(*Id.* at ¶ 27.)

In reliance upon the representations on the Application and the SOCI that were certified as true by Dawe and the Trust, Phoenix issued the Policy with a policy date of March 8, 2007. (*Id.* at ¶29.)

## A.    The Death of the Insured and Competing Claims for the Policy Proceeds

Dawe died on March 3, 2010.[2]  (*Id.* at ¶ 33.)  On June 9, 2010, Life Equity, LLC ("Life Equity") submitted a letter to Phoenix asserting a claim on behalf of the Trust.  (*Id.* at ¶ 35.)  On or about July 16, 2010, Christopher Hammatt submitted a letter to Phoenix asserting a competing claim on behalf of the Price Dawe Irrevocable Insurance Trust (the "2008 Trust").  (*Id.* at ¶ 36.)

## B.    Phoenix's Discovery That the Policy Was Procured Through a STOLI Scheme

Following Dawe's death and the submission of the competing claims for the death benefit under the Policy, Phoenix initiated an investigation into the representations made on the Application and SOCI.  (*Id.* at ¶ 37.)  Phoenix learned, through its investigation, that Dawe and the Trust made numerous misrepresentations on the Application and SOCI regarding Dawe's net worth, income, the purpose of the insurance, source of funding for the Policy, and whether there was an intent or understanding that a third-party would obtain an interest in the Policy.  (*Id.* at ¶ 37.)  More specifically, Dawe did not have a net worth of $14,000,000, earned income of $106,000, or other income of $400,000 and he did not have legitimate insurance needs for a $9,000,000 life insurance policy.  (*Id.* at ¶ 38.)  In fact, Dawe's 2007 tax returns showed gross income of only $279,000 in 2007, $270,000 of which was money Dawe received from the sale of the Policy's beneficial interest to GIII, the third-party investor who purchased the Policy.  (*Id.* at

---

[2] Phoenix's Complaint inadvertently referenced March 3, 2009, rather than March 3, 2010, as Dawe's date of death.

¶ 38 n. 11; ¶¶ 20, 39, 44.)  Dawe's sole intent in procuring the Policy was to immediately sell it to GIII, who had no insurable interest in his life.

### III.    NATURE OF THE MOTION AND SUMMARY OF ARGUMENT

Through its Complaint, Phoenix seeks a declaration that the Policy is an illegal wagering contract lacking the requisite insurable interest and is therefore void *ab initio*.[3]  The Trust's Motion seeks dismissal of Phoenix's Complaint for failure to state a claim upon which relief can be granted.  In support, the Trust argues that:

1. Phoenix cannot contest the validity of the Policy because the Policy's two-year contestability period has expired and there is no exception for a challenge based on lack of insurable interest;

2. Phoenix cannot contest the validity of the Policy because the Policy's two-year contestability period has expired and there is no exception for a challenge based on fraud; and

3. Phoenix's requested interpleader relief should be denied because any money is owed to the Trust.

(*See* the Motion.)

These assertions are legally unsupportable.  As the Trust has not challenged the sufficiency of Phoenix's factual allegations, it apparently concedes that Phoenix has alleged a viable claim that the Policy was never supported by a valid insurable interest, at inception or otherwise, and is therefore void *ab initio*.  Indeed, Phoenix has alleged that Dawe was solicited to apply for a life insurance policy for the sole purpose of selling the beneficial interest in the

---

[3] Alternatively and additionally, Phoenix seeks a judicial determination as to the proper recipient of any death benefits payable or premiums returnable under the Policy.

{00492106;v1}

Policy to stranger investors, who had no insurable interest in Dawe's life, through fraudulent transactions concealed from Phoenix. Prior to the inception of the Policy, there was a plan and intention between and among Dawe and others that the beneficial interest in the Policy would be sold into the secondary life insurance market. The STOLI investor driving these transactions, GIII, was gambling on when Dawe would die, intending to profit from his death. In fact, this Court has already determined that a life insurance policy issued pursuant to the STOLI scheme perpetrated by GIII lacks an insurable interest and is void as contrary to public policy. *See Rucker*, 2010 WL 3395661, at *4–5.

The expiration of the Policy's incontestability clause is of no relevance to this case. Contrary to the Trust's assertions, because a life insurance policy procured as a wager policy and not supported by a valid insurable interest is void *ab initio*, the contestable period does not bar a challenge to its validity. Such a result is supported by the public policy considerations behind Delaware's insurable interest laws and is also consistent with the vast majority of other jurisdictions that have addressed this question. A contract that is illegal and whose very existence is antithetical to longstanding public policy cannot be enforced due to a term contained within the illicit contract; that is, an illegal contract cannot be made enforceable by inclusion of a term prohibiting a challenge to the contract's validity. The Trust incorrectly asserts that the Delaware Supreme Court would determine that the statutory requirement of inclusion of an incontestability clause in insurance contracts trumps both the public policy against wagering on the lives of others and the requirement of an insurable interest as a condition precedent to the existence of a life insurance contract. It is clear from Delaware law that the Delaware Supreme Court would reach the exact opposite result than that advocated by the Trust and would find the Policy void.

{00492106;v1}

Additionally, and as noted by the Trust, although Phoenix asserts that a fraud was perpetrated by the Trust and others, Phoenix has not alleged a cause of action specifically based upon fraud, as its Complaint is grounded in lack of insurable interest.[4]   As such, Phoenix's ability to rescind due to fraud outside of the contestability period is irrelevant.

Finally, Phoenix's claim for interpleader relief cannot be dismissed because Phoenix is subject to multiple and conflicting claims to the Policy proceeds, whether in the form of death benefits or returnable premiums.  The fact that the Trust asserts that it, rather than the competing claimant, is ultimately entitled to any Policy proceeds is irrelevant in a determination of whether an interpleader action is properly before the Court, which is clearly the case.

## IV.   ARGUMENT

### A.   Standard of Review

In determining if a claim for relief has been stated, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *See Twombly*, 550 U.S. at 555; *Mark IV Indus. Corp. v. Transcore, L.P.*, 2009 U.S. Dist. LEXIS 112069, *4 (D. Del. Dec. 2, 2009); *Pearson v. Chugach Gov't Servs.*, 2009 U.S. Dist. LEXIS 103861, *7 (D. Del. Nov. 6, 2009).   A motion to dismiss may only be granted where a complaint does not "state a claim that is plausible on its face."  *See Travelers Cas. & Sur. Co. of Am. v. Bancorp Bank*, 691 F. Supp. 2d 531, 534 (D. Del. 2009) (citing *Twombly*, 550 U.S. at 570 (A complaint should not be dismissed where the "factual allegations [are] enough to

---

[4] Specifically, the fraud perpetrated supports a finding of lack of insurable interest because there can be no legitimate intent to purchase a $9,000,000 life insurance policy by someone who has no means to pay the premiums on the Policy, which were in excess of $400,000 for the first year alone.

{00492106;v1}

raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

**B.      Public Policy Mandates That This Policy is Void *Ab Initio***

Despite what the Trust would have this Court believe, it is well-settled that an insurance policy is void *ab initio* under Delaware law if it lacks an insurable interest. *See Baltimore Life Ins. Co. v. Floyd,* 28 Del. 201, 205–06 (Del. 1914) ("insurance procured upon a life by one or in favor of one under circumstances of speculation or hazard amounts to a wager contract and is therefore *void,* upon the theory that it contravenes public policy."); *Rucker* 2010 WL 3395661, at * 3–5 ("The Policy therefore lacked an insurable interest at inception and is void as contrary to public policy and Delaware's insurable interest statute."). Here, Phoenix properly alleges that the Policy, as a product of a STOLI scheme, constitutes an illegal wagering contract issued without an insurable interest, and is therefore void *ab initio.*

**1.      Public Policy and Law Preclude "Wagering Contracts"**

The public policy against wagering contracts and the requirement for insurable interest was concisely expressed over a century ago in *Warnock v. Davis,* 104 U.S. 775 (1881), in which the Court stated that for there to be insurable interest:

> there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. *They are, therefore, independently of any statute on the subject, condemned, as being against public policy.*

*See id.* at 779 (emphasis added). That is exactly the problem with STOLI policies: stranger-investors are directly interested in and hoping for the early death of the insured; they have no personal relationship with the insured and are being forced to pay very large premium payments

8

to keep the policy in force while the insured is alive.  The quicker the insured dies, the better the return on their investment.  STOLI schemes are simply a modern incarnation of the evil condemned by the Supreme Court in *Warnock* and are not permitted by Delaware law and public policy.

Delaware law mandates that "no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his/her personal representatives or to a person having, at the time when such contract was made, an insurable interest in the individual insured." *See* DEL. CODE ANN. tit. 18, § 2704(a).[5,6]  Delaware law further provides that if a party shows no insurable interest at the inception of the contract, then "he fails to disclose a valid contract of

---

[5] Similar insurable interest legislation can be found in the majority of states.  *See e.g.*, ALASKA STAT. § 21.42.090(2) (2007); ARIZ. REV. STAT. ANN. § 20- 1104(A)-(C) (2007); ARK. CODE ANN. § 23-79-103 (West 2010); CAL. INS. CODE §§ 280, 10110 (West 2010); GA. CODE ANN. § 33-24-3 (West 2010); HI REV. STAT. § 431:10-204 (2007); IDAHO CODE ANN. § 41-1804 (2007); KAN. STAT. ANN. § 40-450 (2007); KY. REV. STAT. ANN. §§ 299.150, 304.14-040 (West 2010); LA. REV. STAT. ANN. §22:901 (West 2010); ME. REV. STAT. ANN. § 2404 (2007); MD CODE ANN. INS. § 12-201 (West 2010); MI. COMP. LAWS ANN. § 500.2211 (West 2010); MISS. CODE ANN. § 83-5-251 (West 2010); MONT. CODE ANN. § 33-15-201 (2010); NEV. REV. STAT. ANN. §687B.040 (West 2010); N.J. STAT. ANN. § 17B:24-1.1 (West 2010); N.M. STAT. ANN. § 59A-18-4 (West 2010); N.Y. INS. LAW §3205(B)(McKinney2007); N.D. CENT. CODE §26.1-29-04 (West 2010); OKLA. STAT. ANN. Tit. 36, §3604 (West 2010); R.I. GEN. LAWS §27-4-27 (West 2010); S.D. CODIFIED LAWS § 58-10-4; UTAH CODE ANN. § 31A-21-104 (West 2010); VA. CODE ANN. § 38.2-301 (West 2010); WASH. REV. CODE ANN. §48.18.030 (West 2010); W. VA. CODE ANN. § 33-6-2 (West 2010); and WYO. STAT. ANN. § 26-15-102 (West 2010).

[6] Several states have enacted explicit anti-STOLI legislation.  *See e.g.* Arizona (A.K.S. § 20-443.02), Connecticut (CONN. GEN. STAT. § 38a-465); Hawaii (H.R.S. § 431E-2), Indiana (IN CODE § 27-8-19.8-7.8); Iowa (I.C.A. § 508K.2); Kansas (K.S.A. § 40-5002); Kentucky (K.R.S. § 304-15-020); Louisiana (LA R.S. § 22:195); Maine (M.R.S.A. § 6802); Nebraska (NEB. REV. ST. § 44-1110); New York (NY Ins. Law § 7815); North Dakota (NDCC 26.1-33.3-10); Ohio (R.C. § 3916.16); Oklahoma (36 OKL ST. ANN. § 4055.2); and West Virginia (WVA. CODE ANN. § 33-J3C-1I).

{00492106;v1}

insurance," and a policy lacking insurable interest "amounts to a wager, and wager policies are void upon the ground that they are contrary to public policy." *See Draper v. Del. State Grange. Mut. Fire Ins. Co.,* 91 A. 206, 207 (Del. Super. Ct. 1914). In other words, a policy lacking insurable interest is against public policy, is void from inception, or void *ab initio,* and never came into existence.

### 2.    Incontestability Provisions Do Not Apply to Wagering Contracts that Are Void *Ab Initio*

The Trust argues that the Policy's incontestability provision precludes Phoenix from asserting that the Policy is void. Contrary to the Trust's assertion, incontestability provisions do not apply to policies that are void *ab initio* as violating public policy and lacking insurable interest; as such Phoenix is permitted to raise lack of insurable interest at any time, regardless of the incontestability provision.[7] A lack of insurable interest at inception renders the policy *ab initio*; thus the policy never came into effect. It follows that if no contract ever came into effect, then neither did any of the contractual provisions, including the incontestability clause. Additionally, an illegal contract void as against public policy becomes no more enforceable due to inclusion of an incontestability clause. For these reasons, courts allow a party to raise lack of

---

[7] There is a difference between a contract that is void *ab initio* and one that is voidable. It has been stated generally: [t]he difference between a contract that is void *ab initio* and one that is merely voidable is that "a voidable contract can be ratified and enforced by the obligor, although not by the wrongdoer, while the void contract cannot be." (citations omitted). In other words, a contract that is void *ab initio* is treated as though it never existed; neither party can chose [sic] to ratify the contract by simply waiving its right to assert the defect. On the other hand, if a contract is merely voidable, a party can either opt to void the contract based upon that defect, or choose, instead, [to] waive that defect and ratify the contract despite it. *See Ill. State Bar Assoc. Mutual Ins. Co. v. Coregis Ins. Co.,* 821 N.E.2d 706, 713 (Ill. App. Ct. 2004); *see also New Testament Baptist Church Inc. of Miami v. State,* 993 So. 2d 112, 116 (Fla. Dist. Ct. App. 2008) (noting that "the difference between void and voidable contracts is whether they offend public policy. Contracts that offend an individual, such as those arising from fraud, misrepresentation, are voidable. Only contracts that offend public policy or harm the public are void ab initio") (citations omitted).

10

insurable interest where an incontestability clause might otherwise be applicable. *See Beard v. Am. Agency Life Ins. Co.,* 550 A.2d 677, 689 (Md. 1988) (citations omitted) ("Incontestability does not apply to a policy which is void *ab initio*. The invocation of an incontestability provision presupposes a basically valid contract"); *Brown v. Mass. Casualty Ins. Co.,* 1995 U.S. App. LEXIS 23779, *6–7 (9th Cir. Aug. 8, 1995) (insured must have insurable interest at the time the policy becomes effective; if no insurable interest exists, then the policy is void *ab initio* and may be contested "even after the contestability period has expired"); *Obartuch v. Security Mut. Life Ins. Co.,* 114 F.2d 873, 878 (7th Cir. 1940) (the incontestable clause "presupposes a valid contract and not one void *ab initio* - it cannot be used as a vehicle to sanctify that which never existed . . . [Here,] . . . the policies as issued were void and the incontestable clause without effect").

The overwhelming majority of courts across the nation that have addressed this issue have held that the lack of insurable interest at inception is an issue that may be raised notwithstanding an incontestability provision,[8] or otherwise provide at least that a policy lacking

---

[8] *See Paul Revere Life Ins. Co. v. Fima,* 105 F.3d 490 (9th Cir. 1997) (an insurance policy is void *ab initio* where the insured lacks insurable interest and "California law provides that a policy which is void *ab initio* may be contested at any time, even after the incontestability period has expired"); *John Hancock Life Ins. Co. v. Rubenstein,* No. 09-21741-CIV-UNGARO (S.D. Fla. Sept. 1, 2009) (holding that "[i]f the policy is void *ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect"); *Minnesota Mutual Life Ins. Co v. Ricciardello,* 1997 WL 631027, *2 fn.2 (D. Conn. Sept. 17, 1997) ("incontestability clause is also not to bar the defense that the policy was void *ab initio*, or the defense of lack of insurable interest"); *Kentucky Cent. Life Ins. Co. v. McNabb,* 825 F. Supp. 269, 272–73 (D. Kan. 1993) ("person who insurance the life of another must have an insurable interest therein, or the policy is deemed void *ab initio*"; procurer failed to establish insurable interest, policy was void *ab initio*, and "incontestability clause does not bar plaintiff [insurer] from asserting lack of insurable interest"); *Commonwealth Life Ins. Co. v. George,* 28 So. 2d 910, 912 (Ala. 1947) (a policy lacking insurable interest "is void and unenforcible [sic] on the ground of public policy, it being merely a wagering contract . . . such a policy is void at its inception and is not rendered valid by a clause declaring it incontestable after a specified period of time"; concluding that

11

insurable interest is void *ab initio*.[9]   These cases clearly hold that an incontestability clause in a

---

"incontestable clause furnished no answer to the defense that the plaintiff was without insurable interest" and that the policy was void); *Home Life Ins. Co. v. Masterson*, 21 S.W.2d 414, 417 (Ark. 1929) (policy was void as wager contract and against public policy, and argument that policy was incontestable failed); *Carter v. Cont'l Life Ins. Co.*, 115 F.2d 947, 947–48 (D.C. Cir. 1940) (insurer successfully defended on the ground that policy lacked insurable interest; policy was void *ab initio* and incontestable clause did not prevent insurer from asserting defense); *Wood v. New York Life Ins. Co.*, 336 S.E.2d 806, 811–12 (Ga. 1985) (incontestability clauses "presuppose the existence of a contract 'in force.' However, an insurance contract that is void *ab initio* as against public policy is never 'in force,' cannot be ratified or affirmed, and is not subject to being enforced by the courts"; a "contrary conclusion would permit the unreasonable result that an incontestability clause would breathe life into an insurance contract which the General Assembly intended to have no life"); *Charbonnier v. Chicago Nat'l Life Ins. Co.*, 266 Ill. App. 412, 421–22 (1932) (policy taken out by one with no insurable interest in the insured is void at its inception and is not rendered valid by a clause declaring it incontestable after the lapse of a specific period of time); *Bromley's Adm'r v. Washington Life Ins. Co.*, 92 S.W. 17, 18 (Ky. 1906) ("incontestable clause is no less a part of the contract than any other provision of it. If the contract is against public policy the court will not lends its aid to its enforcement. . . . The parties to an illegal contract cannot by stipulating that it shall be incontestable, tie the hands of the court and compel it to enforce contracts which are illegal and void"); *Goodwin v. Fed. Mut. Ins. Co.*, 180 So. 662, 665 (La. Ct. App. 1938) (beneficiaries endeavored to effect the insurance for the purpose of 'speculating on the hazard of a life'. . . the policies *ab initio* were void and without legal effect"; also citing with approval to Couch's Encyclopedia on Insurance, "an incontestable clause in an insurance policy does not prevent the insurer from defending on the ground that it was issued to one having no insurable interest, and is, therefore, void as against public policy"); *Beard,* 550 A.2d at 691 (having found that policies lacked insurable interest and that they were void *ab initio,* the incontestability clause did not apply and "is not a bar to the lack of insurable interest defense"); *Harris v. Sovereign Camp,* 1940 WL 2917, at *2 (Ohio Ct. App. Feb. 19, 1940) (citing with approval the proposition that an incontestability clause does not prevent an insurer from defending on the ground of want of insurable interest after expiration of contestable period); *Henderson v. Life Ins. Co. of Va.*, 179 S.E. 680, 692 (S.C. 1935) (contract lacked insurable interest at inception and was void *ab initio* as a wager contract against public policy; the incontestable clause was part of the contract, and "when the contract fails, the incontestable clause necessarily fails with it").

[9] *See Sun Life Assur. Co. of Canada v. Moran,* 2009 U.S. Dist. LEXIS 76289, *9–10 (D. Ariz. Aug. 11, 2009); *Atkinson v. Wal-Mart Stores, Inc.,* 2009 WL 1458020, at *3 (M.D. Fla. May 26, 2009); *Fuller v. Metropolitan Life Ins. Co. of N.Y.,* 41 A. 4, 15 (Conn. 1898); *Hilliard v. Jacobs,* 874 N.E.2d 1060, 1063 (Ind. Ct. App. 2007); *Farmers Butter and Dairy Co-op. v. Farm Bureau Mut. Ins. Co.,* 196 N.W.2d 533 (Iowa 1972); *National Life & Acc. Ins. Co. v. Ball,* 127 So. 268, 268 (Miss. 1930); *Stevens v. Woodmen of the World,* 71 P.2d 898, 904 (Mont. 1937); *Lowe v. Rennert,* 869 S.W.2d 199, 202 (Mo. Ct. App. 1993); *Chamberlain v. Butler,* 86 N.W. 481, 482 (Neb. 1901); *Mechanic's Nat'l Bank v. Comins,* 55 A. 191, 192 (N.H. 1903); *Wharton v. Home Sec. Life Ins. Co.,* 173 S.E. 338, 339 (N.C. 1934); *Brett v. Warnick,* 75 P.

12

policy only applies to legitimate policies, and a policy lacking an insurable interest is void *ab initio* and therefore not a valid or legitimate policy.

### (a)   The Delaware Supreme Court Would Follow the Overwhelming Majority of Jurisdictions and Reject the Outdated *Caruso* Opinion

In its Motion, the Trust attempts to pigeonhole Delaware into the minority on this issue, by placing extraordinary significance on a single New York decision, *New England Mut. Life Ins. Co. v. Caruso,* 535 N.E. 2d 270 (N.Y. 1989), which the Trust argues would bar Phoenix's claim as incontestable.  (See Motion at 10–13.)  Indeed, the Trust argues this Court should apply that case, decided by the New York Court of Appeals in 1989—before the development of STOLI schemes like the instant one and New York's subsequent anti-STOLI legislation—because it wants to take advantage of what it sees as a favorable case that it believes will countenance its fraudulent STOLI scheme.

However, New York has a unique legislative history with regard to incontestability clauses.  That history is examined in detail in *Caruso* revealing significant insight into New York's position on incontestability—a position not shared by Delaware.  *See id.* at 272–73.  In New York, the legislative history clearly shows that the Insurance Law specifically was, "not intended to make such policies void for want of an insurable interest in the policyholder." *Id.* at 273.  Additionally, as quoted by the court in *Caruso,* a transcript of the debate regarding New York's insurable interest statute shows that the New York legislature was well aware that New York's position was counter to the position of most other states:

---

1061, 1064 (Or. 1904); *Werenzinski v. Prudential Ins. Co. of America,* 14 A.2d 279, 280 (Pa. 1940); *United Sec. Life Ins., Etc., Co. v. Brown,* 113 A. 443, 445 (Pa. 1921); *Cronin v. Vermont Life Ins. Co.,* 40 A. 497, 497 (R.I. 1898); *Mohr v. Prudential Ins. Co.,* 78 A. 554, 557 (R.I. 1911); *Washington v. Atlanta Life Ins. Co.,* 136 S.W.2d 493 (Tenn. 1940); *Crismond's Adm'x v. Jones,* 83 S.E. 1045, 1046 (Va. 1915); *Buckner v. Ridgely Protective Ass'n,* 229 P. 313, 316 (Wash. 1924); *Fire Ass'n of Philadelphia v. Ward,* 42 S.E.2d 713, 716 (W. Va. 1947).

{00492106;v1}

* * *

> on account of the weight of authority in other states and because it
> was in accordance with the rules here laid down,—and I might say
> incidentally I got the suggestion from a professor in one of the law
> schools in this state and he felt very strongly that this should be the
> rule and that we should correct the dictum in that rule which was
> laid down in the case of Wright against the Mutual Benefit Life
> Association about 50 years ago, and that we should make a law of
> New York in conformity with what has been held in other states,
> namely, that an illegal contract is always contestable.

*Caruso*, 73 N.Y. 2d at 273 n.*.

Application of this New York decision to the instant matter would undermine Delaware's

public policy against wagering contracts and its insurable interest laws—which clearly evidence

an intent to make wagering contracts void as a matter of public policy—and sanction the Trust's

illegal STOLI scheme.[10]   In addition, as pointed out in detail above, the position taken by the

Trust is clearly in the minority. (*See infra* nn. 5–6, 8–9.)

The great weight of authority holds that a policy procured in violation of insurable

---

[10] Further, although the Trust did not cite to it in its Opening Brief, Phoenix anticipates the Trust will argue in its reply brief that *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539 (N.Y. 2010) applies to this case. *Kramer* was a case decided on a narrow set of issues applying unique New York insurance statutes and it does not apply to this case. *See generally Kramer*, 15 N.Y.3d 539. The *Kramer* court found that because the policies at issue were purchased by the insured on his own life, they were governed by New York Insurance Law § 3205(b)(1), which does not contain an insurable interest requirement. *Id.* at 550–551. The court based its holding, in part, on the lack of legislative intent to limit an insured's ability to assign insurance policies immediately after purchase. *Id.* at 553. The precedential value of *Kramer* is limited even in New York because the New York legislature recently revised the state's insurance laws to prohibit STOLI transactions. *See* NY Ins. Law § 7815 ("No person shall directly or indirectly engage in any act, practice or arrangement that constitutes stranger originated life insurance."). Accordingly, *Kramer's* New York-specific holding no longer provides support even in New York on insurable interest issues and should not be considered by this Court. Moreover, in *Kramer* the New York Court of Appeals expressly declined to address whether the rule from *Caruso* should be extended to STOLI cases, and thus has not decided whether rescission claims that go to the very essence of a contract's formation—such as those Phoenix has in this case and which Phoenix contends render the Policy void *ab initio*—are barred by the incontestability clause in a life insurance policy. See *Kramer* at 548, n. 4.

14

interest laws and lacking insurable interest is void *ab initio*.  As such, the Policy, including its incontestability provision, is void as against public policy, never came into existence, and thus the incontestability provisions cannot be used to preclude Phoenix from asserting that the Policy is void.  The longstanding public policy against wagering contracts takes precedence over contractual incontestability provisions, and parties cannot contract around such public policy or expect the courts to enforce such agreements.  The incontestability provisions in the Policy do not apply to bar Phoenix from asserting that the Policy is void *ab initio* for lack of insurable interest at inception.

> **(b)    Statutory Mandate to Include Incontestability Clause in Insurance Contracts Does not Supersede Public Policy Against Wagering Contracts and Insurable Interest Requirement**

To the extent this Court determines there is a conflict between the insurable interest requirements and the requirement that an insurance policy have an incontestability provision, the incontestability requirement is trumped by the insurable interest requirement.  *See Beard*, 550 A.2d at 690.   Indeed, Maryland, which has similar statutory insurable interest and incontestability provision requirements as Delaware[11] has concluded that "while the incontestability statute serves the substantial public interest in protecting claimants from the possibility of expensive litigation, the public policy behind the statutory requirement that the procurer of insurance have an insurable interest in the insured is an even more compelling goal." *Id.* at 690–91 (concluding that lack of insurable interest rendered insurance contracts void *ab initio,* and the incontestability clause did not apply and was not a bar to the lack of insurable interest defense); *see also Guarantee Trust Life Ins. Co. v. Wood,* 631 F. Supp. 15, 9–11 (N.D.

---

[11] *Compare* MD. CODE ANN., INS. ART. 48A, §390 and 18 Del. C. § 2704(a) (2010) (for incontestability provisions); MD. CODE ANN., INS. ART. 48A, §366(a) and 18 Del. C. § 2704(a) (2010) (for insurable interest provisions).

{00492106;v1}

Ga. 1984) (even though insurer was statutorily required to include incontestability clause, the statutory mandate that insured apply for or consent in writing to issuance of the insurance took priority; because insured did not apply or consent to the insurance, the policies were void *ab initio* as against public policy and incontestability clause was not applicable).

As noted by the Trust, one purpose of the required incontestability clause is to provide insureds and their beneficiaries with a fixed period of repose. *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1151 (Del. 1997) (describing the mandated incontestability clause in a health insurance contract to a period of repose). However, this purpose presupposes a basically valid insurance contract, or, at the very least, a voidable contract containing misrepresentations. There is no public policy served by providing repose to those who would seek to create an illegal and void contract.

**C.**     **The Court Should Not Dismiss the Complaint for Interpleader**

The Court should not dismiss Phoenix's request for interpleader relief. Phoenix has properly pled a count for interpleader relief to resolve the competing claims to the proceeds of the Policy between the Trust and the 2008 Trust. In the event that the Court determines that the Policy is valid, Phoenix seeks to interplead the policy proceeds, if it is deemed void *ab initio*, Phoenix seeks to interplead the premiums returnable to the policy owner. (*See* Compl.¶¶ 51–72.) The Trust's attempt to defeat the interpleader where there are two obvious competing claims is untimely. The Trust's right to the entirety of either the premiums or the death benefit can only be determined after a fact inquiry, it cannot be determined in a motion to dismiss.

## V.   **CONCLUSION**

For the foregoing reasons, Plaintiff PHL Variable Life Insurance Company respectfully requests that the Court deny the Trust's motion to dismiss and direct the Trust to answer Plaintiff's Complaint.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*

Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for Plaintiff*
*PHL Variable Insurance Company*

*Of Counsel:*

Thomas F.A. Hetherington
Jarrett E. Ganer
EDISON, McDOWELL & HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

Dated:  February 28, 2011

{00492106;v1}