# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY | § § § | No. 174, 2011 |
| v. | § § § | Certification of Questions of Law |
| PRICE DAWE 2006 INSURANCE TRUST, by and through its trustee, CHRISTIANA BANK AND TRUST COMPANY, et al. | § § § § § | United States District Court for the District of Delaware C.A. No. 10-964 |

The following docket entry has been e-filed in the above cause.

September 21, 2011.   Certified copy of Opinion decided September 20, 2011, to United States District Court for the District of Delaware.  **Questions Answered. Case closed.**

cc:   The Honorable Berle M. Schiller
Richard D. Heins, Esquire
Tiffany Geyer Lydon, Esquire
John E. James, Esquire
David E. Moore, Esquire
Michael B. Rush, Esquire
Benjamin A. Schwartz, Esquire

2011 SEP 23  PM 2: 51

CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

U.S District Court for the District of Delaware
Received Above

By _____

Date _____

Date:  September 21, 2011

*/s/ Audrey F. Bacino*_____
Assistant Clerk of Supreme Court

EFiled: Sep 20 2011 12:45PM EDT
Filing ID 39912146
Case Number **174,2011**

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) |
| | ) No. 174, 2011 |
| Plaintiff Appellant, | ) |
| | ) Certification of |
| v. | ) Questions of Law from |
| | ) the United States |
| PRICE DAWE 2006 INSURANCE TRUST, | ) District Court for the |
| by and through its trustee, CHRISTIANA BANK | ) District of Delaware |
| AND TRUST COMPANY, et al., | ) |
| | ) C.A. No. 10-964 |
| Defendant Appellees. | ) |
| | ) |

Submitted: August 17, 2011
Decided: September 20, 2011

Before **STEELE**, Chief Justice, **HOLLAND, BERGER, JACOBS** and
**RIDGELY**, Justices constituting the Court *en banc.*

Questions Answered: Question One **AFFIRMATIVE**; Question Two
**NEGATIVE** and, Question Three **AFFIRMATIVE**.

Richard D. Heins and Tiffany Geyer Lydon of Ashby & Geddes,
Wilmington, Delaware. Of Counsel: Thomas F.A. Hetherington (argued) and
Jarrett E. Ganer of Edison McDowell & Hetherington, LLP, Houston, Texas for
appellant.

John E. James, David E. Moore, Michael B. Rush of Potter Anderson &
Corroon LLP, Wilmington, Delaware. Of Counsel: John E. Failla (argued), Elise
A. Yablonski and Nathan Lander of Proskauer Rose LLP, New York, New York
and Lary Alan Rappaport of Proskauer Rose LLP, Los Angeles, California for
appellee.

Benjamin A. Schwartz of Schwartz & Schwartz, Dover, Delaware. Of
Counsel: Neil Merkl and James V. O'Gara of Kelly Drye & Warren, LLP, New
York, New York for Amicus Curiae American Council of Life Insurance.

**STEELE**, Chief Justice:

This is a proceeding, under Article IV, Section 11(8) of the Delaware Constitution and Supreme Court Rule 41, on a question of law certified to, and accepted by us, from the United States District Court for the District of Delaware. The certified questions arise from two similar cases—*PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust* (Dawe) and *Lincoln National Life Insurance Co. v. Joseph Schlanger 2006 Insurance Trust* (Schlanger).[1]  In both cases, an insurer sought a judicial declaration that a life insurance policy that lacked an insurable interest was void as an illegal contract wagering on human life.  The district court denied both motions to dismiss and certified three questions to the Supreme Court of Delaware concerning the incontestability provision required under 18 *Del. C.* § 2908 and the insurable interest requirement under 18 *Del. C.* § 2704.

## FACTUAL AND PROCEDURAL BACKGROUND

The Price Dawe 2006 Insurance Trust is a Delaware statutory trust that Price Dawe formed in December 2006 with a family trust as the beneficiary.  Dawe was the beneficiary of the family trust.  PHL Variable Insurance Co. (Phoenix) issued a $9 million Delaware life insurance policy on Dawe's life with an issue date of March 8, 2007.  The Dawe Trust was the owner and beneficiary of the policy.  The

---

[1] *PHL Variable Insurance Trust v. Price Dawe 2006 Insurance Trust*, C.A. No. 10-964-BMS (D. Del. Nov. 12, 2010) and *The Lincoln National Life Insurance Company v. Joseph Schlanger 2006 Insurance Trust*, C.A. No. 09-506-BMS, 2010 WL 2898315 (D. Del. July 20, 2010).

policy contains an incontestability provision stating that "[t]his policy shall be Incontestable after it has been in force for two years from the Issue Date, except for fraud, or any provision for reinstatement or policy change requiring evidence of insurability." Dawe died on March 3, 2010. On June 9, 2010, the Dawe Trust made a claim to Phoenix for the death benefit. Phoenix first contested the policy by filing this lawsuit on November 10, 2010, approximately 3 ½ years after the policy issue date. These facts are undisputed and constitute the official record for our purposes.[2]

In its original complaint, Phoenix contended that Dawe did not qualify, and had no legitimate need, for a $9 million life insurance policy. The insurance company claims Dawe misrepresented his income and assets in his application and that he was financially induced into participating in the transaction as part of a stranger originated life insurance ("STOLI") scheme. Phoenix further alleges that Dawe never intended to retain the policy, and always intended that the policy would be immediately transferred to an unrelated third party investor, GIII, a private investing entity. Phoenix claims that the defendant Trust and Dawe were used as straw men to allow GIII, which had no insurable interest, to conceal a wager on Dawe's life. Phoenix more specifically contends that on or about May

---

[2] Supreme Court Rule 41(c)(iv), which concerns Certification of Questions of Law provides that only those facts contained in the certification are actually part of the record. D.R.S.C. Rule 41(c)(iv) ("The certification as filed shall constitute the record."). Nevertheless, the additional allegations from the plaintiffs' pleadings are included below in order to provide better context.

3

14, 2007, less than two months after the policy went into force, GIII formally purchased the beneficial interest of the Dawe Trust from the Family Trust for $376,111, and did not file a change of ownership or change of beneficiary form with the company. After Dawe died, Phoenix received two competing claims for the death benefit, leading to an investigation that allegedly revealed the true nature of Dawe's life insurance transaction. Phoenix then filed suit in the United States District Court for the District of Delaware in order to obtain a declaration that the policy is void. After denying the defendant Trust's motion to dismiss, the district court certified three questions of Delaware law to this Court, which we accepted.

### *THE CERTIFIED QUESTIONS*

The questions presented are issues of law which this Court decides *de novo*.[3]

1) Does Delaware law permit an insurer to challenge the validity of a life insurance policy based on a lack of insurable interest after the expiration of the two-year contestability period required by 18 *Del. C.* § 2908?[4]

2) Does 18 *Del. C.* § 2704(a) and (c)(5) prohibit an insured from procuring or effecting a policy on his or her own life and immediately transferring the policy, or a beneficial interest in a trust that owns and is the beneficiary of the policy, to a person without an insurable interest in the insured's life, if the insured did

---

[3] *CA, Inc. v. AFSCME Employees Pension Plan*, 953 A.2d 227, 231 (Del. 2008).

[4] *The Lincoln National Life Insurance Company v. Joseph Schlanger 2006 Insurance Trust*, C.A. No. 09-506-BMS (D. Del. July 20, 2010) also certified the first question to this court. Therefore, the answer and analysis for both questions will be the same.

not ever intend to provide insurance protection for a person with an
insurable interest in his or her life?

3) Does 18 *Del. C.* § 2704(a) and (c)(5) confer upon the trustee of a
Delaware trust established by an individual insured an insurable
interest in the life of that individual when, at the time of the
application for life insurance, the insured intends that the beneficial
interest in the Delaware trust would be transferred to a third-party
investor with no insurable interest in that individual's life following
the issuance of the life insurance policy?

## *ANALYSIS*

### *I.   CERTIFIED QUESTION ONE: CONTESTABILITY*

The first certified question, shared by both *Dawe* and *Schlanger*, concerns

whether an insurer may claim that a life insurance policy never came into

existence, on the basis of a lack of insurable interest, where the challenge occurs

after the insurance contract's mandatory contestability period expires.  As certified

by the district court in *Dawe*:

> Does Delaware law permit an insurer to challenge the validity of a
> life insurance policy based on a lack of insurable interest after the
> expiration of the two-year contestability period required by 18 *Del.
> C.* § 2908?[5]

Our answer to question one is **"YES."**  That answer is consistent with that

reached by the majority of courts; namely, that a life insurance policy lacking an

---

[5] The district court in *Schlanger* posed the question as, "Can a life insurer contest the validity of
a life insurance policy based on a lack of insurable interest after expiration of the two-year
contestability period set out in the policy as required by 18 *Del. C.* § 2908?"

insurable interest is void as against public policy and thus never comes into force, making the incontestability provision inapplicable.

Phoenix and *amicus curiae* American Council of Life Insurers argue that we should side with the majority of courts and hold that the expiration of a contractual contestability period mandated by the Delaware Insurance Code does not bar an insurer from contesting the validity of a life insurance policy based on a lack of insurable interest. They contend that under Delaware law, a life insurance policy without an insurable interest is nothing more than a wager on human life that is void as against public policy. As a result, the insurers assert, the incontestability provision does not bar their suits because the provision, which is only one component of the entire life insurance contract, never legally came into effect at all.

The defendant Dawe Trusts argue that we should side with the courts of New York and Michigan and hold that plaintiffs' suits are barred by the incontestability provision of each life insurance contract. They contend that the plain meaning of the pertinent provisions of the Insurance Code makes clear that these provisions bar all types of challenges to a life insurance policy's validity after the required contestability period expires. The defendants argue that the distinction between contracts void at the outset and those voidable at the option of

6

the innocent party is irrelevant, and that life insurance policies in violation of Delaware's insurable interest requirement are not automatically void.

## A.     **Historical Background**

An incontestability clause is a contractual provision wherein the insurer agrees that, after a policy has been in force for a given period of time, that it will not contest the policy based on misrepresentations in the insurance application.[6] The insurance industry has used incontestability clauses for more than 100 years to encourage customers to purchase insurance.[7] Originating in England in the mid-nineteenth century, incontestability clauses were created as a marketing device to increase public trust in insurance companies.[8] Before incontestability clauses were introduced, insureds sometimes paid premiums for a long period of time only to have the insurer declare the contract void because of misrepresentations in the application.[9] These misrepresentations were often innocent, but by that point the insured was deceased and unable to address the basis of the challenge.[10] Insurance

---

[6] Bertram Harnett & Irving I. Lesnick, *The Law of Life and Health Insurance* § 5.07 (Matthew Bender, Rev. Ed. 2010)).

[7] Katherine Cooper, *Liar's Poker: The Effect of Incontestability Clauses After* Paul Revere Life Insurance Co. v. Haas, 1 Conn. Ins. L.J. 225, 228 (Spring 1995)).

[8] Erin Wessling, *Contracts – Applying the Plain Language to Incontestability Clauses*, 27 Wm. Mitchell L. Rev. 1253, 1256 (2000)).

[9] *Id.*

[10] *Id.*

companies therefore created the incontestability clause in order to address consumer uncertainty.

Incontestability clauses provide security in financial planning for the insured, while also providing an insurer a reasonable opportunity to investigate any misrepresentations in the application.  These provisions essentially serve the same function as statutes of limitation and repose.[11]  By the early twentieth century, life insurance policies included incontestability clauses as a matter of industry practice.[12]  Forty three states have adopted mandatory contestable clauses relating to life insurance policies, while four states also have incontestability clauses relating to other types of insurance.[13]  Consequently, over the years, the clause has become a standard provision in most, if not all, life insurance contracts.[14]

## B.   Delaware Insurance Code

The Delaware Insurance Code requires that all life insurance policies include a incontestability clause.[15]  The applicable statute in relevant part provides:

---

[11] *See Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1151 (Del. 1997)).

[12] Wessling, *Contracts – Applying the Plain Language to Incontestability Clauses*, *supra* note 8 at 1257.

[13] *Id.*

[14] *Id.*

[15] 18 *Del. C.* § 2908 (2011).

There shall be a provision that the policy shall be incontestable after it has been *in force* during the lifetime of the insured for a period of not more than 2 years after its date of issue, except for (1) nonpayment of premiums, and (2) at the insurer's option, provisions relating to benefits in the event of total and permanent disability and provisions granting additional benefits specifically against death by accident or accidental means.[16]

Section 2917 of the Insurance Code affirms the class of challenges that are covered by a mandatory incontestability provision, but also lists certain challenges that are not precluded by this language:

A clause in any policy of life insurance providing that such policy shall be incontestable after a specified period shall preclude only a contest of the *validity of the policy* and shall not preclude the assertion at any time of defenses based upon provisions in the policy which exclude or restrict coverage, whether or not such restrictions or exclusions are excepted in such clause.[17]

The defendant trusts argue that the plain language of section 2917 makes clear that an incontestability clause precludes any challenge to the enforceability of a life insurance contract after the two-year contestability period expires. This argument ignores the fact that the Delaware General Assembly chose to implement its goals through a mandatory *contractual* term, as distinguished from a direct ban on challenges to policy validity after a certain time. This creates an ambiguity in section 2917 on the meaning of the word "validity." We read the statute to be entirely subject to Delaware's existing law of contract formation. Put simply,

---

[16] *Id.* (emphasis added).

[17] 18 *Del. C.* § 2917 (emphasis added).

under the Delaware statute, the incontestability provision should be treated like any other contract term. That reading is supported by the plain language of section 2908, which states that "[t]here shall be a provision that the policy shall be incontestable after it has been *in force* during the lifetime of the insured for a period of not more than 2 years." These words accordingly make the incontestability period *directly contingent* on the formation of a valid contract. That is the view of the majority of state courts that have considered this question.[18]

## C.   Distinguishing between void and voidable contracts

As with all contracts, fraud in the inducement renders a life insurance policy voidable at the election of the innocent party.[19] Certain agreements, however, are so egregiously flawed that they are void at the outset. These arrangements are often referred to as void *ab initio*, Latin for "from the beginning." A court may never enforce agreements void *ab initio*, no matter what the intentions of the

---

[18] *See, e.g., Beard v. Am. Agency Life Ins. Co.*, 550 A.2d 677, 689 (Md. 1988); *Wood v. New York Life Ins. Co.*, 336 S.E.2d 806, 811-12 (Ga. 1985); *Commonwealth Life Ins. Co. v. George*, 28 So. 2d 910, 912-14 (Ala. 1947); Henderson v. Life Ins. Co. of Va., 179 S.E. 680, 692 (S.C. 1935); *Ludwinska v. John Hancock Mut. Life Ins. Co.*, 178 A. 28, 30 (Pa. 1935); *Home Life Ins. Co. v. Masterson*, 21 S.W.2d 414, 417 (Ark. 1929); *Bromley's Administrator v. Washington Life Ins. Co.*, 92 S.W. 17 (Ky. 1906); *Harris v. Sovereign Camp Woodmen of the World*, 31 Ohio Law Abs. 317 (Ohio Ct. App. 1940); *Goodwin v. Fed. Mut. Ins. Co.*, 180 So. 662, 665 (La. Ct. App. 1938); *Charbonnier v. Chicago Nat'l Life Ins. Co.*, 266 Ill.App. 412 (Ill. App. Ct. 1932). *But see, New England Mut. Life Ins. Co. v. Caruso*, 535 N.E. 2d 270 (N.Y. 1989); *Bogacki v. Great-West Life Assurance Co.*, 234 N.W. 865 (Mich. 1931).

[19] *Dougherty v. Mieczkowski*, 661 F. Supp. 267, 274 (D. Del. 1987) (citing Restatement (Second) Contracts § 163, 164 (1981)) (internal quotations and citations omitted).

parties.  The United States District Court for the District of Delaware succinctly explained this basic contract doctrine in the context of fraud:

> Under the common law of contracts, there is a distinction between fraud in the inducement and fraud in the "factum," or execution. Fraud in the factum occurs when a party makes a misrepresentation that is regarded as going to the very character of the proposed contract itself, as when one party induces the other to sign a document by falsely stating that it has no legal effect. If the misrepresentation is of this type, then there is no contract at all, or what is sometimes anomalously described as a void, as opposed to voidable, contract. If the fraud relates to the inducement to enter the contract, then the agreement is "voidable" at the option of the innocent party. The distinction is that if there is fraud in the inducement, the contract is enforceable against at least one party, while fraud in the factum means that at no time was there a contractual obligation between the parties.[20]

Under Delaware common law, contracts that offend public policy or harm the public are deemed *void* as opposed to voidable.[21]

### D.   A life insurance contract that lacks an insurable interest at inception is void *ab initio*

Under Delaware common law, if a life insurance policy lacks an insurable interest at inception, it is void *ab initio*[22] because it violates Delaware's clear

---

[20] *Id.*

[21] *Sann v. Renal Care Centers Corp.*, 1995 WL 161458, at *5 (Del. Super. Ct.) ("stating that "[a]s a general rule, agreements against public policy are illegal and void....No agreement can be sustained if it is inconsistent with the public interest or detrimental to the public good.").

[22] *Baltimore Life Ins. Co. v. Floyd*, 91 A. 653 (Del. Super. Ct. 1914) (holding that where a party lacking an insurable interest procures a policy directly or by assignment on the life of another, "the transaction is a mere speculation...contrary to public policy, and therefore void"), *aff'd* 94 A.

public policy against wagering.[23]  It follows, therefore, that if no insurance policy ever legally came into effect, then neither did any of its provisions, including the statutorily required incontestability clause.  "[T]he incontestable clause is no less a part of the contract than any other provision of it."[24]  As a result, the incontestability provision does not bar an insurer from asserting a claim on the basis of a lack of insurable interest.[25]  We reject the contrary result reached in *New England Mut. Life Ins. Co. v. Caruso*, because in that case the New York court, unlike Delaware and most other jurisdictions, held that a policy lacking an insurable interest was *not* void at the outset.[26]

Therefore, an insurer can challenge the enforceability of a life insurance contract after the incontestability period where a lack of insurable interest voids the contract.  For this reason we answer Question one affirmatively.

---

515, 520 (Del. 1915); *Draper v. Delaware State Grange Mut. Fire Ins. Co.*, 91 A. 206, 207 (Del. Super. Ct. 1914) (same).

[23] *See Frank v. Horizon*, 553 A.2d 1199, 1205 (Del. 1998) (holding that a contract provision that violates clear public policy is invalid as a matter of law).

[24] *Bromley's Adm'r*, 92 S.W. at 18.

[25] Our current case is distinguishable from *Oglesby*. *See Oglesby*, 695 A.2d at 1151. In *Oglesby*, this Court held the incontestability provision barred the insurer from contesting the validity of the contract based on misrepresentations in the insurance application related to pre-existing conditions. *Id.* This issue is resolvable by analyzing the nature of the fraud. Fraud relating to insurable interest is a fraud on the court because it violates the constitutional prohibition against wagering, and thus renders the contract void *ab initio*—a nullity. In contrast, basic fraud, such as misrepresentations in the application, renders the contract voidable subject to the contestability period.

[26] *Caruso*, 535 N.E. 2d at 221.

## *II. CERTIFIED QUESTION TWO: INTENT TO TRANSFER*

The second certified question concerns whether the statutory insurable interest requirement is violated where the insured procures a life insurance policy with the intent to immediately transfer the benefit to an individual or entity lacking an insurable interest:

> Does 18 *Del. C.* § 2704(a) and (c)(5) prohibit an insured from procuring or effecting a policy on his or her own life and immediately transferring the policy, or a beneficial interest in a trust that owns and is the beneficiary of the policy, to a person without an insurable interest in the insured's life, if the insured did not ever intend to provide insurance protection for a person with an insurable interest in his or her life?

Our answer to question number two is "**NO**," so long as the insured procured or effected the policy and the policy is not a mere cover for a wager.

PHL and ACLI argue that the Dawe policy violates Delaware's insurable interest statute because Dawe procured the policy with the intent to transfer it immediately to an investor without an insurable interest. They argue that the insurable interest requirement is a substantive regulation that would be completely undermined by ignoring intent. The insurers assert that the opposite result is illogical because it would give a procedural loophole to STOLI scheme promoters.

The Dawe Trust counters that reading an intent requirement into the insurable interest statute is at odds with its plain language. The Trust accordingly urges this Court not to engraft an intent element onto the law because it would be

13

at odds with our principles of statutory construction. More specifically, the Dawe Trust argues that insurable interest is determined only at the moment the life insurance contract becomes effective. According to the Dawe Trust, the Delaware Insurance Code abrogates older Delaware cases decided at common law, which looked beyond the initial beneficiary to the intent of the parties when determining insurable interest. The Trust also emphasizes that life insurance policies are freely assignable under Delaware law.

## A.    **Historical Background**

Since the initial creation of life insurance during the sixteenth century, speculators have sought to use insurance to wager on the lives of strangers.[27] In England, dead pools and the use of insurance to wager on strangers' lives actually became a popular pastime.[28] In response, Parliament enacted the Life Assurance Act of 1774 which prohibited the use of insurance as a wagering contract unlinked to a demonstrated economic risk.[29] Although the Act did not use the words "insurable interest," the concept was embedded in the Act. This principle eventually crossed the herring pond and became firmly rooted in the common law

---

[27] Susan Lord Martin, *Betting on the Lives of Strangers: Life Settlements, STOLI and Securitization*, 134 U. Pa. J. Bus. L. 173, 175 (2010).

[28] *Id.*

[29] *Id.*

of every state in the Union.[30]  More than a century ago, the United States Supreme Court concisely articulated the public policy behind the insurable interest requirement:

> [T]here must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood or affinity, to expect some benefit or advantage from the continuance of the life of the assured.  Otherwise the contract is a mere wage, by which the party taking the policy is directly interested in the early death of the assured.  *Such policies have a tendency to create a desire for the event.*  They are, therefore, independently of any statute on the subject, condemned, as being against public policy.[31]

Over the last two decades, however, an active secondary market for life insurance, sometimes referred to as the life settlement industry, has emerged.[32] This secondary market allows policy holders who no longer need life insurance to receive necessary cash during their lifetimes.  The market provides a favorable alternative to allowing a policy to lapse, or receiving only the cash surrender value. The secondary market for life insurance is perfectly legal.  Indeed, today it is highly regulated.  In fact, most states have enacted statutes governing secondary market transactions, and all jurisdictions permit the transfer or sale of legitimately

---

[30] *Id.* at 177.

[31] *Warnock v. Davis*, 104 U.S. 775, 779 (1881) (emphasis added). *See also Grigsby v. Russell*, 222 U.S. 149, 154 (1911) ("A contract of insurance upon a life in which the insured has no interest is a pure wager that gives the insured a sinister counter interest in having the life come to an end.").

[32] See Anthony Alt, *Spin-Life Insurance Policies: A Dizzying Effect on Human Dignity and the Death of Life Insurance*, 7 Ave Maria L. Rev. 605, 619-20 (2009); Kelly J. Bozanic, *An Investment to Die For: From Life Insurance to Death Bonds, the Evolution and Legality of the Life Settlement Industry*, 113 Penn St. L. Rev. 229, 231, 234, 256 (2008).

procured life insurance policies. Virtually all jurisdictions, nevertheless, still prohibit third parties from creating life insurance policies for the benefit of those who have no relationship to the insured. These policies, commonly known as "stranger originated life insurance," or STOLI, lack an insurable interest and are thus an illegal wager on human life.

In approximately 2004, securitization emerged in the life settlement industry. Under this investment method, policies are pooled into an entity whose shares are then securitized and sold to investors.[33] Securitization substantially increased the demand for life settlements, but did not affect the supply side, which remained constrained by a limited number of seniors who had unwanted policies of sufficiently high value. As a result, STOLI promoters sought to solve the supply problem by generating new, high value policies.

### B. The Insurable Interest Statute is Ambiguous

The plain language of 18 *Del. C.* § 2704(a) is ambiguous because a literal reading of the statute would permit wagering contracts, which are prohibited by the Delaware Constitution.[34] The rules of statutory construction are well settled.[35]

---

[33] Martin, 134 U. Pa. J. Bus. L. at 192-93.

[34] DEL. CONST. art. II, § 17.

[35] *Taylor v. Diamond State Port Corp.*, 14 A.3d 536, 538 (Del. 2011) (citing *Dewey Beach Enters., Inc. v. Bd. of Adjustment*, 1 A.3d 305, 307 (Del. 2010).

First, we must decide if the statute is ambiguous.[36]  A statute is ambiguous if it is susceptible of two reasonable interpretations[37] or if a literal reading of its terms "would lead to an unreasonable or absurd result not contemplated by the legislature."[38]  If it is unambiguous, then there is no room for judicial interpretation and "the plain meaning of the statutory language controls."[39]  If, on the other hand, the statute is ambiguous, then we consider it as a whole and we read each section in light of all the others to produce a harmonious whole.[40]  Only when a statute is ambiguous do we look for guidance to its apparent purpose and place it as part of a broader statutory scheme.[41]  We also ascribe a purpose to the General Assembly's use of particular statutory language and construe it against surplusage if reasonably possible.[42]  Courts should, however, interpret statutory law consistently with pre-existing common law unless the legislature expresses a contrary intent.[43]  We

---

[36] *Id.*

[37] *Id.*

[38] *LeVan v. Indep. Mall, Inc.*, 940 A.2d 929, 933 (Del. 2007) (quoting *Newtowne Vill. Serv. Corp. v. Newtowne Rd. Dev. Co.*, 772 A.2d 172, 175 (Del. 2001)).

[39] *LeVan*, 940 A.2d at 933 (quoting *Eliason v. Englehart*, 733 A.2d 944, 946 (Del. 1999)).

[40] *Taylor*, 14 A.3d at 538 (citing *Dewey Beach Enters.*, 1 A.3d at 307).

[41] *Ins. Com'r of State of Delaware v. Sun Life Assur. Co. of Canada*, 21 A.3d at 20 (citing *Eliason v. Englehart*, 733 A.2d 944, 946 (Del.1999)).

[42] *Id.*

[43] *A.W. Fin. Servs., S.A. v. Empire Res., Inc.*, 981 A.2d 1114, 1121 (Del. 2009).

accordingly must approach section 2704(a) with these principles of statutory construction in mind.

The Delaware Constitution prohibits all forms of gambling unless it falls within one of the enumerated exceptions.[44] Nearly one hundred years ago, the United States Supreme Court explained, "[a] contract of insurance upon a life in which the insured has no interest is a pure wager . . . ."[45] Accordingly, a life insurance policy procured or effected without an insurable interest is a wager on the life of the insured the Delaware Constitution prohibits. Because a literal reading of the statute creates an absurd result not contemplated by the General Assembly, we must interpret the statute in conformity with both Delaware law and the General Assembly's intent.

## C.   The Delaware common law required an insurable interest

Phoenix and ACLI argue that the statutory language prohibits entering into a life insurance contract with the intent immediately to transfer the policy to someone without an insurable interest. The United States District Court for the District of Delaware has reached the same conclusion.[46] ACLI correctly points out

---

[44] DEL. CONST. art. II, § 17.

[45] *Grigsby*, 222 U.S. at 155.

[46] *See Sun Life Assur. Co. of Canada v. Berck*, CIV. 09-498-SLR, 2011 WL 922289 (D. Del. Mar. 16, 2011) (noting that insurable interest requirements are not satisfied where an insured takes out a policy in the beginning as a mere cover for a wager); *Principal Life Ins. Co. v. Lawrence Rucker 2007 Ins. Trust*, 735 F. Supp. 2d 130, 140 (D. Del. 2010), *reargument denied*

that under Delaware common law, an assignment may not be used as a formalistic cover for what in substance amounts to a wager.[47] Phoenix and ACLI also argue that ignoring intent would result in an illogical triumph of form over substance that would completely undermine the policy goals behind the insurable interest requirement.[48] We agree.

For nearly one hundred years, Delaware law has required an insurable interest as a way to distinguish between insurance and wagering contracts. In *Baltimore Life Ins. Co. v. Floyd*, the court explained:

> [T]he legitimate scheme of life insurance is inclined to be distorted and to some it affords an invitation for a mischievous kind of gambling. To avoid this misuse of a most useful character of undertaking, in which a beneficiary may become interested in the early death of the insured, it is held that the insurance upon a life shall be effected and resorted to only for some benefit incident to or contemplated by the insured, and that insurance procured upon a life by one *or in favor of one under*

(Nov. 1, 2010) (same); Schlanger, 2010 WL 2898315, at *7 (same*); Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 558 (D. Del. 2010) (same).

[47] *See Grigsby*, 222 U.S. at 155 ("[C]ases in which a person having an interest lends himself to one without any, as a cloak to what is, in its inception, a wager, have no similarity to those where an honest contract is sold in good faith."); *Floyd*, 91 A. at 656 ("Where a third party, without any insurable interest in the life of another, procures a policy of insurance on the life of such person, either by having a policy issued directly to himself, *or by having the person whose life is insured take out a policy to himself, and then assign it*, these facts...conclusively show that the transaction is a mere speculation on the life of another, and as such is contrary to public policy, and therefore void." (citation omitted) (emphasis added)).

[48] *See, e.g.*, Phoenix Op. Br. at 21 ("The Trust would reduce insurable interest—the embodiment of the requirement that insurance insure against an actual risk, which is the essence of insurance—to a check box that could be satisfied by reference to paperwork drafter in a satisfactorily [sic.] manner.").

*circumstances of speculation or hazard* amounts to a wager contract and is therefore void, upon the theory that it contravenes public policy.

The presence of an insurable interest on the part of the beneficiary is urged as a request to avoid the appearance of a wager contract, holding that without such an interest, the interest in the beneficiary is speculative. An insurable interest of the beneficiary may be shown by proof of the fact of relationship between the beneficiary and the insured within certain degrees, and by proof of pecuniary interest, such as arise between partners and between debtors and creditors. Evidence of such an insurable interest is evidence that the contract is not a wager and is evidence of the contracts validity.

If the beneficiary has an insurable interest *and the transaction is otherwise legal*, the policy is valid; if he has not such an interest the policy may be valid, if the transaction is bona fide and free from speculation.[49]

In *Floyd*, the court analyzed the intricacies of the insurable interest requirement in detail, including the general rule that, where "the transaction is bona fide, a person may take insurance upon his own life for the benefit of one having no insurable interest in his life."[50] This general rule is based upon "the theory that it is not reasonable to suppose that a person will insure his own life for the purpose of speculation."[51] However, the identity of the contracting party is not dispositive to the determination of whether an insurance policy is bona fide.

One of the tests as to the validity of the contract is to determine by whom the premiums are to be paid. If the one taking the insurance pays the

---

[49] 91 A. at 655-56; *aff'd* 94 A. 515, 520 (Del. 1915).

[50] *Id.*

[51] *Id.* at 656.

premiums, the transaction is generally upheld. But there is a strong, though not universal, tendency to condemn contracts in which the premiums are paid by the beneficiary [who holds no insurable interest].[52]

In 1968, the General Assembly codified the insurable interest requirement,[53] in a statute which essentially restated the substantive considerations of *Floyd*.[54] When the General Assembly enacted section 2704 in 1968, it specified categories of persons who have an insurable interest in the life of the insured and who may "procure or cause to be procured" life insurance on the insured. These categories include anyone having a "lawful and substantial economic interest" in the insured's life, parties to a contract for the purchase or sale of a business interest, and any relatives having a "substantial interest engendered by love and affection."[55]

### D.    The General Assembly codified the common law insurable interest requirement

The tenets of statutory construction require us to interpret statutes consistent with the common law[56] unless the statutory language clearly and explicitly

---

[52] *Id.*

[53] 56 Del. Laws, ch. 380, § 2704 (1967).

[54] Admittedly, the General Assembly could have expressly stated "we abolish the concept of wagering contracts through the insurable interest requirement," or something similar. We, however, believe and the statute supports the fundamental concept against wagering contracts.

[55] *Id.*

[56] *A.W. Fin. Servs.*, 981 A.2d at 1121 (citing 15A C.J.S. *Common Law* § 16); *see also State v. Rogers*, 820 A.2d 1171, 1177 (Del. Super. 2003).

expresses an intent to abrogate the common law.[57]   Although the insurable interest

requirement is originally a creature of both state and pre-*Erie*[58] federal common

law,[59] it is now codified in the Delaware Insurance Code.   In relevant part, the

Insurance Code provides:

> Any individual of competent legal capacity may procure or effect an
> insurance contract upon his/her own life or body for the benefit of any
> person, but no person shall procure or cause to be procured any
> insurance contract upon the life or body of another individual unless
> the benefits under such contract are payable to the individual insured
> or his/her personal representatives or to a person having, at the time
> when such contract was made, an insurable interest in the individual
> insured.[60]

Section 2704(a) has two parts.   The first clause provides that a person may

procure or effect insurance on *his own life* for the benefit of anyone.   This clause

has no limiting language concerning intent, or even requires the beneficiary to have

---

[57] *Id*; *see also Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Virginia*, 464 U.S. 30, 35 (1983) ("It is a well-established principle of statutory construction that [t]he common law ... ought not to be deemed repealed, unless the language of a statute be clear and explicit for this purpose.") (quotation marks omitted, ellipsis in original).

[58] *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938) (holding that federal courts do not have the power to create general federal common law when hearing state law claims under diversity jurisdiction and accordingly must apply state substantive law in diversity cases).

[59] *See Grigsby*, 222 U.S. at 154-55 (holding that person procuring a life insurance policy is required to have an "insurable interest"); *Warnock*, 104 U.S. at 779 (holding that contracts wagering on human life are against public policy); *Floyd*, 91 A. at 656 (holding that where a party lacking an insurable interest procures a policy directly or by assignment on the life of another, "the transaction is a mere speculation...contrary to public policy, and therefore void"), *aff'd* 94 A. 515, 520 (Del. 1915); *Draper v. Delaware State Grange Mut. Fire Ins. Co.*, 91 A. 206, 207 (Del. Super. Ct. 1914) (same).

[60] 18 *Del. C.* § 2704(a).

.

an insurable interest in the life of the insured. Section 2704(a) provides that "[a]ny individual of competent legal capacity may procure or effect an insurance contract upon his/her own life or body for the benefit of *any person*..."[61] In contrast to the first clause, the remainder of the section concerns procuring insurance on the *life of another*. Under this language, policies "procure[d] or cause[d] to be procured" on the life of someone other than the person seeking the insurance must be payable to the "insured or his/her personal representatives or to a person having, *at the time when such contract was made*, an insurable interest in the individual insured."[62]

Although the statute has been periodically updated,[63] the substance of Delaware law on insurable interest has remained the same. An insured is permitted to take out an insurance policy on his own life, but the law prohibits persons other than the insured from procuring or causing to be procured insurance, unless the benefits are payable to one holding an insurable interest in the insured's life.[64]

---

[61] *Id.*

[62] *Id.* (emphasis added).

[63] The General Assembly has expanded the class of persons who have an insurable interest in the life of the insured to reflect modern commercial developments and transactions relating to Corporate Owned Life Insurance and Trust Owned Life Insurance. 67 Del. Laws, ch. 161 (1989); 69 Del. Laws, ch. 462 (1994); 69 Del. Laws, ch. 462; 71 Del. Laws, ch. 239, § 2 (1998).

[64] *Id.* Every individual has an insurable interest in his or her own life and all of the following have an insurable interest in the life of the individual insured: (1) individuals closely related by blood or law; (2) other persons who have a lawful and substantial economic interest in the continuance of the life of the insured and distinguished by an interest which only arises or would be enhanced by the death of the insured; (3) employers; (4) parties to a contract for the purchase

23

The insurable interest requirement serves the substantive goal of preventing speculation on human life. For this reason, section 2704(a) requires more than just technical compliance at the time of issuance. Indeed, the STOLI schemes are created to feign technical compliance with insurable interest statutes. If a third party procures life insurance on another person or causes the procurement of life insurance on another person—the beneficiary of that contract must have an insurable interest in the life of the insured. At issue is whether a third party having no insurable interest can use the insured as a means to procure a life insurance policy that the statute would otherwise prohibit. Our answer is no, because if that third party uses the insured as an instrumentality to procure the policy, then the third party is actually causing the policy to be procured, which the second clause of section 2704(a) proscribes.

The statute defines the moment in time the insurable interest requirement applies—"the time when such contract was made," i.e., the moment the life insurance contract becomes effective.[65] Thus, the insurable interest requirement does not place any restrictions on the subsequent sale or transfer of a bona fide life insurance policy. Indeed, section 2720 of the Delaware Insurance Code makes life insurance policies assignable to anyone, even a stranger, *subject to any contractual*

---

or sale of a business interest; and (5) trustees of a trust established by an individual. 18 *Del. C.* § 2704(c) (1)-(5).

[65] 18 *Del. C.* § 2704(a).

*restrictions in the policy*.[66] Section 2720 comports with the United States Supreme Court decision *Grigsby v. Russell*[67] and does not abrogate the common law as established in *Baltimore Life Ins. Co. v. Floyd*. Read this way, a life insurance policy that is validly issued is assignable to anyone, with or without an insurable interest, at any time. The key distinction is that a third party cannot use the insured as a means or instrumentality to procure a policy that, when issued, would otherwise lack an insurable interest.

Recently, the New York Court of Appeals answered a similar certified question, holding that an insured may procure insurance on his own life with the intent to immediately assign it to another. We find *Kramer v. Phoenix Life Ins. Co.*[68] distinguishable because the insured purchased policies on his own life and a provision of the New York insurance law[69] that did not contain an insurable interest requirement governed those policies. Moreover, *Kramer* was decided on a narrow set of issues applying unique New York insurance statutes, which are not

---

[66] 18 *Del. C.* § 2720 ("A policy may be assignable or not assignable, *as provided by its terms*." (emphasis added)).

[67] *See also Grigsby*, 222 U.S. at 155 (holding an insured may assign a validly procured life insurance policy to a third party without an insurable interest).

[68] 15 N.Y.3d 539, 551, 940 N.E.2d 535 (2010).

[69] N.Y. Ins. Law § 3205(b)(1) ("Any person of lawful age may on his own initiative procure or effect a contract of insurance upon his own person for the benefit of any person, firm, association or corporation. *Nothing herein shall be deemed to prohibit the immediate transfer or assignment of a contract so procured or effectuated*." (emphasis added)).

applicable here.[70]   Notably, after *Kramer* the New York legislature revised the state's insurance laws to prohibit STOLI transactions, limiting the precedential value of *Kramer*, even in New York.[71]

### E.   Determining who procured or effected the policy

The General Assembly did provide one specific exception to the insurable interest requirement, which allows issuance of a policy where the person paying the premiums does not have an insurable interest in the insured's life. Under that exception, the beneficiary must be a benevolent, educational or religious institution and the payor be designated as the owner.[72]   The logical implication of this exception is that in cases not covered, it would be impermissible if the person paying the premium had no insurable interest in the life of the insured or if the person paying the premiums were not the policy owner.  For this reason, we must interpret section 2704 and section 2705 in harmony and not render the language of section 2705 superfluous.

"If the insured procures the policy at the behest of another, the policy may nevertheless lack a legally insurable interest."[73]   To determine who procured the

---

[70] *See generally*, *Kramer*, 14 N.Y.3d 539.

[71] *See* N.Y. Ins. Law § 7815 (McKinney 2007) ("No person shall directly or indirectly engage in any act, practice or arrangement that constitutes stranger originated life insurance.").

[72] 18 *Del. C.* § 2705.

[73] *Schlanger 2006 Ins. Trust*, CIV. 09-506-GMS, 2010 WL 2898315, at *6.

policy, we look at who pays the premiums.[74]   Indeed, section 2704(a) and section 2705 read together require the insured to fund the premiums on the policy unless the payor is a charitable, benevolent, educational, or religious institution. Therefore, if a third party financially induces the insured to procure a life insurance contract with the intent to immediately transfer the policy to a third party, the contract lacks an insurable interest.   Stated differently, if an insured procures a policy as a mere cover for a wager, then the insurable interest requirement is not satisfied.[75]

An insured's right to take out a policy with the intent to immediately transfer the policy is not unqualified.   That right is limited to bona fide sales of that policy taken out in good faith.[76]   A bona fide insurance policy sale or assignment requires that the insured take out the policy in good faith—not as a cover for a wagering contract.[77]   Certainly, if A cannot procure a life insurance policy on the life of B

---

[74] *Floyd*, 91 A. at 656.

[75] *Rucker 2007 Ins. Trust*, 735 F.Supp. 2d at 140.

[76] *See Bussinger v. Bank of Watertown*, 30 N.W. 290, 294 (Wis. 1886) (noting the benefits to the insured of the alienability of bona fide policies); *Clement v. New York Life Ins. Co.*, 46 S.W. 561, 564 (Tenn. 1898) (voiding policy where insured had pre-arranged a deal to obtain the policy and transfer it to a third-party with no insurable interest immediately after issuance because "the transfer and assignment must be made in good faith, and not as a mere colorable evasion of the provision in regard to wagering contracts, [] in order to validate or legalize the same").

[77] *See Chamberlain v. Butler*, 86 N.W. 481, 483 (Neb. 1901) (finding that an assignment to one without an insurable interest is permitted where the transaction is "wholly independent of and subsequent to" issuance of the policy, and that if the transfer "agreement had existed prior to the issuance of the policy, or contemporaneous therewith" the policy would be void).

without having an insurable interest in B's life then A cannot induce B's procurement of a life insurance policy with the intent to allow A to immediately purchase the policy for a nominal sum. "If the first is a speculating and wagering policy so is the last."[78] Thus, section 2704 requires courts to scrutinize the circumstances under which the policy was issued and determine who in fact procured or effected the policy.

Payment of the premiums by the insured, as opposed to someone with no insurable interest in the insured's life, provides strong evidence that the transaction is bona fide.[79] Under section 2704(a), the insured is free to "procure or effect" a policy on his own life for the benefit of anyone. Life insurance policies, however, do not come into effect without premiums, so an insured cannot "procure or effect" a policy without actually paying the premiums. Notably, section 2708, which prohibits policies issued without the consent of the insured except in narrow situations not present here, utilizes the phrase "applies therefore or has consented thereto in writing." By implication, "procuring or effecting" a policy has to be something more than simply applying for a policy or providing written consent to the policy's issuance. Therefore, if a third party funds the premium payments by providing the insured the financial means to purchase the policy then the insured

---

[78] *Clark v. Allen*, 11 R.I. 439, 440 (R.I. 1877).

[79] *Floyd*, 91 A. at 655-56.

does not procure or affect the policy. Accordingly, third parties are prohibited from procuring or causing to be procured insurance contracts on the life of the insured unless the policy benefits are payable to someone with an insurable interest.

In summary, the insured's subjective intent for procuring a life insurance policy is not the relevant inquiry. The relevant inquiry is who procured the policy and whether or not that person meets the insurable interest requirements.

### III.   CERTIFIED QUESTION THREE: THE TRUST'S INTEREST

The third certified question concerns whether the relevant statutory provisions confer upon a trustee an insurable interest in the life of the individual insured who established the trust if the insured intends to transfer the beneficial interest in the trust to a third-party investor with no insurable interest. As certified by the district court:

> Does 18 *Del.* C. § 2704(a) and (c)(5) confer upon the trustee of a Delaware trust established by an individual insured an insurable interest in the life of that individual when, at the time of the application for life insurance, the insured intends that the beneficial interest in the Delaware trust would be transferred to a third-party investor with no insurable interest in that individual's life following the issuance of the life insurance policy?

Our answer to question number three is **"YES,"** as long as the individual insured actually established the trust. If, however, the insured

29

does not create and fund the trust then the relationship contemplated under section 2704(c)(5) is not satisfied.

Phoenix argues section 2704(c)(5) must be interpreted in the context of section 2704(a) and Delaware common law, which prohibit wagering contracts channeled through trusts. Dawe argues that section 2704(c)(5) recognizes a trust's right to own life insurance policies by conferring on a trustee a broad insurable interest in the life of the insured. Delaware statutory trusts did not exist at common law. The policy of the Delaware Statutory Trust Act is to give maximum effect to freedom of contract and the enforceability of governing instruments, and its provisions are to be construed broadly even if in derogation of the common law.

## A.   **Recent Changes to Section 2704(c)(5)**

Section 2704(c) describes categories of persons and entities having an insurable interest in the life of the insured. Section 2704(c)(5) confers on the trustee of a trust an insurable interest in the life of the person who established the trust.

On July 13, 2011, after the parties completed briefing,[80] the Governor signed Senate Bill No. 83, an Act to amend Titles 10, 12, 18, and 25 of the Delaware Code relating to judicial procedure, fiduciary relations, insurance and property. Section 17 of that Act addresses 18 *Del. C.* § 2704(c)(5).

---

[80] Supr. Ct. R. 15 (a)(vi).

At the time that the parties briefed the certified questions, section 2704(c)(5)

provided in relevant part that:

> The trustee of a trust established by an individual has an insurable interest in the life of that individual and the same insurable interest in the life of any other individual as does any person who is treated as the owner of such trust for federal income tax purposes.

Section 2704(c)(5) now provides, in pertinent part, that:

> The trustee of a trust *created and initially funded* by an individual has an insurable interest in the life of that individual and the same insurable interest in the life of any other individual as does any person who is treated as the owner of such trust for federal income tax purposes *without regard to*:
>
> a. *The identity of the trust beneficiaries*
> b. *Whether the identity of the trust beneficiaries changes from time to time; and*
> c. *The means by which any trust beneficiary acquires a beneficial interest in the trust.*[81]

Importantly, the prior statutory language did not limit who may be a trust

beneficiary or require the beneficiary to have an independent insurable interest.

The revised language expressly states that a trustee has an insurable interest

"without regard to the identity of the trust beneficiaries, whether the [trust

beneficiaries] change . . . , and the means by which any trust beneficiary acquires a

beneficial interest in the trust."[82]   The Synopsis of Senate Bill 83 states the

---

[81] The synopsis of Senate Bill No. 83 addressing 18 *Del. C.* § 2704 (c)(5) states:
[I]t is intended to clarify the provisions of current law which state categorically that a trust has an insurable interest in the life of the person who creates the trust.

[82] 18 *Del. C.* § 2704(c)(5) (a)-(c), effective August 1, 2011.

revisions were intended to "clarify the provisions of current law" concerning when a trust has an insurable interest, meaning the recent changes did not alter the earlier statute. Thus, a trust has an insurable interest in the life of the person who established—*created and initially funded*—the trust without regard to whether the beneficial interest in the trust is subsequently sold or transferred.

**B.**     **Section 2704(c)(5) must be read in harmony with Section 2704(a)**

As noted in Section IIC above, we must interpret section 2704(c) in light of section 2704(a) to create harmony within the statute. Section 2704(c)(5) requires more than just technical compliance with section 2704(a), otherwise section 2704(c)(5) would expressly authorize wagering contracts, so long as it was conducted through a trust for whom the insured was the settlor or grantor. And as explained in Question two, a life insurance policy procured or effected without an insurable interest is a wager on the life of the insured and is prohibited by the Delaware Constitution.

Section 2704(c)(5) only grants the trustee of a Delaware trust an insurable interest in the life of the individual insured if the trust is "established" by the individual insured. The insured, as settlor or grantor, must both create and initially fund the trust corpus. This requirement is not satisfied if the trust is created through nominal funding as a mere formality. If the funding is provided by a third

party as part of a pre-negotiated agreement—then the substantive requirements of sections 2704(a) and 2704(c)(5) are not met.

Parties cannot use section 2704(c)(5) to do indirectly what 2704(a) clearly prohibits parties from doing directly. The general rule, as explained in Question two, "is that all persons have an insurable interest in their own life . . . and may . . . insure their life in good faith for the benefit of any person whom they see fit to name as the beneficiary, regardless of whether such person has an insurable interest in their life, provided it not be done by way of cover for a wagering policy."[83] Thus, an individual insured can procure a policy and name his own trust as the owner and beneficiary of that validly procured life insurance policy, and the policy complies with the first clause of section 2704(a). Additionally, the individual insured can establish—create and initially fund—a trust for the purpose of procuring life insurance on the individual's own life and the trustee of that trust has an insurable interest under the second clause of section 2704(a) and section 2704(c)(5). In both scenarios, however, either the individual insured or the trustee must intend to purchase the policy for lawful insurance purposes, and not as a cover for a waging contract.

---

[83] 44 Am. Jur. 2d *Insurance* § 978 (2010) (citations omitted); *see* Richard A. Lord, 7 *Williston on Contracts* § 17.5 (4th ed. 2010) ("[A] person may take out a policy on his own life, pay the premiums, and designate as a beneficiary any person he chooses, even though the beneficiary chosen would otherwise have no insurable interest in the life of the insured. Such a policy is not a wagering contract, unless the transaction is for the purpose of speculation and is mere cover for a wagering transaction.").

Where the individual insured creates a trust to hold a life insurance policy on his life and funds the trust with that policy or with money to pay its premiums then the trustee has the same insurable interest that the settlor has in his own life. Thus, we only inquire whether the owner (either the insured or the trust) has an insurable interest in the insured's life at the policy's inception and not whether the beneficiaries of the policy have an insurable interest. If the individual insured creates and initially funds the trust, then the trustee has an insurable interest without regard to how the trust beneficiaries obtained their interest.

Therefore, we answer Certified question three in the affirmative if the life insurance is procured for a legal purpose and not as a cover for an illegal wager contract. In cases where a third party either directly or indirectly funds the premium payments as part of a pre-negotiated arrangement with the insured to immediately transfer ownership, the policy fails at its inception for lack of an insurable interest.

## *CONCLUSION*

For the above reasons, Certified Question one is answered in the affirmative, Certified Question two is answered in the negative and Certified Question three is answered in the affirmative.

**STATE OF DELAWARE**    }
                              } ss.
**KENT COUNTY**            }

I, Audrey F. Bacino, Assistant Clerk of the Supreme Court of the State of Delaware, do hereby certify that the foregoing is a true and correct copy of the Opinion decided September 20, 2011, in ***PHL Variable Insurance Company v. Price Dawe 2006 Insurance Trust, by and through its trustee, Christiana Bank and Trust Company, et al.,*** No. 174, 2011, as it remains on file and of record in said Court.

**IN TESTIMONY WHEREOF,**

I have hereunto set my hand and affixed the seal of said Court at Dover this 21st day of September A.D. 2011.

/s/ *Audrey F. Bacino*
Assistant Clerk of Supreme Court