# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY, | ) | REDACTED PUBLIC VERSION |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 10-964-RGA |
| | ) | |
| PRICE DAWE 2006 INSURANCE TRUST, by and through its trustee, CHRISTIANA BANK AND TRUST COMPANY, and PRICE DAWE IRREVOCABLE LIFE INSURANCE TRUST, by and through its trustee, CHRISTOPHER S. HAMMATT, | ) ) ) ) ) ) ) | ██████████████ |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF PHL VARIABLE INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO EXCLUDE OPINIONS OF AND TESTIMONY BY PRICE DAWE 2006 INSURANCE TRUST'S EXPERT WILLIAM HAGER

Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

Thomas F.A. Hetherington
Jarrett E. Ganer
Kendall J. Burr
EDISON, McDOWELL &
   HETHERINGTON LLP
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

*Attorneys for Plaintiff*
*PHL Variable Insurance Company*

Dated January 22, 2013

{00712628;v1}

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................2

        A.      Factual Background .................................................................................2

        B.      Summary of Hager's Alleged Expertise and Opinions...........................3

III.    LEGAL STANDARD............................................................................................5

IV.     ARGUMENT ........................................................................................................6

        A.      Hager States Opinions on Matters for Which He is Not a Qualified Expert .................6

        1.      Hager is Not Qualified to Give Opinions About Underwriting ....................6

        2.      Hager is Not Qualified to Give Opinions on the Life Settlement Industry ..................8

        B.      Hager's Opinions are Not Reliable ...........................................................10

        1.      Hager's Market Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions ....................................10

        2.      Hager's Transaction Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions.........................................15

        3.      Hager's Bad Faith Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions ....................................16

        C.      Hager's Opinions Do Not Assist the Trier of Fact ...................................16

        1.      Hager's Market Opinions Improperly Opine as to Phoenix's Intent ...........................17

        2.      Hager's Opinions Are Improper Legal Conclusions ..................................18

        3.      Hager's Opinions Are Flawed Because They Rely on Irrelevant "Facts"...................18

V.      CONCLUSION....................................................................................................19

{00712628;v1}

## TABLE OF AUTHORITIES

**Cases**

*Aerotech Resources, Inc. v. Dodson Aviation, Inc.*,
    No. 00-2099-CM, 2001 WL 474296 (D. Kan. Apr. 4, 2001) ........................................... 17

*Association Ben. Services, Inc. v. AdvancePCS Holding Corp.*,
    No. 04 C 3271, 2005 WL 2335484 (N.D. Ill. Sept. 23, 2005)........................................ 17

*Broadcort Capital Corp. v. Summa Medical Corp.*,
    972 F.2d 1183 (10th Cir. 1992) ..................................................................................... 8

*City of Hobbs v. Hartford Fire Ins. Co.*,
    162 F.3d 576 (10th Cir. 1998) ....................................................................................... 8

*Comm'r v. Le Gierse*,
    312 U.S. 531 (1941)...................................................................................................... 15

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)................................................................................................. 5, 10

*Eaton Corp. v. Parker-Hannifin Corp.*,
    292 F. Supp. 2d 555 (D. Del. 2003)........................................................................... 6, 9

*Elcock v. Kmart Corp.*,
    233 F.3d 734 (3d Cir. 2000)........................................................................................... 5

*Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*,
    410 F. Supp. 2d 417 (W.D. Pa. 2006).......................................................................... 17

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997)................................................................................... 6, 10, 11, 14

*Heller v. Shaw Indus., Inc.*,
    167 F.3d 146 (3d Cir.1999)................................................................................ 6, 10, 14

*Kannankeril v. Terminix Int'l, Inc.*,
    128 F.3d 802 (3d Cir. 1997) ........................................................................................ 16

*Kumho Tire Co., Ltd. v. Chemical*,
    526 U.S. 137 (1999)...................................................................................................... 6

*Old Line Life Insurance Company v. Brooks*,
    Civ. No. 05-722 DPJ-JCS, 2007 WL 892448 (S.D. Miss. 2007) .................................... 17

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
    345 F. Supp. 2d 431, 435 (D. Del. 2004)....................................................................... 6

*Proctor & Gamble, Co. v. Teva Pharm. USA, Inc.*,
    No. Civ.A 04-940-JJF, 2006 WL 2241018 (D. Del. Aug. 4, 2006)................................. 18

*Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*,
    No. 97 C 5696, 2004 WL 783356 (N.D. Ill. Jan. 28, 2004) ........................................... 17

{00712628;v1}

*Tasch, Inc. v. Sabine Offshore Serv., Inc.*,
  No. 97-15901 JAB, 1999 WL 596261 (E.D. La. 1999)...................................................... 17

*Transportes Aereos Pesago, S.A. de C.V. v. Bell Helicopter Textron, Inc.*,
  623 F. Supp. 2d 518 (D. Del. 2009)................................................................................ 18

*U.S. v. Schiff*,
  602 F.3d 152 (3d Cir. 2010)..................................................................................... 16, 19

*Watkins v. New Castle County*,
  374 F. Supp. 2d 379 (D. Del. 2005)................................................................................. 6

**Rules**

Fed. R. Civ. P. 702............................................................................................................. passim

iii

{00712628;v1}

Plaintiff PHL Variable Insurance Company ("Phoenix") files this Memorandum of Law in Support of Plaintiff's Motion to Exclude Opinions of and Testimony by Price Dawe 2006 Insurance Trust's Expert William D. Hager, pursuant to Federal Rule of Evidence 702, as follows:

## I.        INTRODUCTION

William D. Hager ("Hager") is being offered by Defendant Price Dawe 2006 Insurance Trust, by and through its trustee, Christiana Bank & Trust ("Trust"), as a purported expert in insurance and the life settlement industry. REDACTED

Hager's opinions should be excluded.  Expert opinions and testimony are admissible under Federal Rule of Evidence 702 only if they are offered by a qualified expert, reliable, and relevant.  Hager's opinions fall short of these requirements in numerous respects.  First, Hager is not qualified as an expert on underwriting or the life settlement industry, and he may not offer opinions based on such matters.  Second, Hager's opinions are not reliable because they lack proper factual foundation, and Hager fails to use sound methodology in reaching his conclusions. Third, Hager's opinions are not relevant because each of them involves questions of law that are

1

for the Court alone to decide, involve facts that have no bearing to the issues in this case, and invade the province of the fact finder.

The Trust bears the burden of establishing that Hager is a qualified expert and that his opinions are both relevant and reliable. Given the many shortcomings of Hager's report and his testimony, the Trust will be unable to do so. As such, Phoenix respectfully requests that Hager's opinions and testimony be excluded at trial pursuant to Federal Rule of Evidence 702.

## II.  **BACKGROUND**

### A.  Factual Background

This lawsuit involves the procurement of a fraudulent life insurance policy, insuring the life of Price Jefferson Dawe (the "Policy"). (*See* Compl., [D.I. 1]). Dawe did not procure the Policy himself; he was merely a straw man used in a "stranger-originated life insurance" ("STOLI") scheme. STOLI involves life insurance being procured as a mere wager on an insured's life, as opposed to protecting the insured's family from the economic consequences of the insured's death. STOLI schemes violate insurable interest laws, which prohibit the use of insurance contracts to wager on a stranger's life. ([D.I. 37], at 16.)

Dawe was a transient with at least four aliases, no known heirs, no taxable estate, no need for $9 million in insurance coverage, and no resources to pay premiums. (*See* Ex. 1, Deposition of Jonni Macdonnell ("Macdonnell Depo.") at 10:12-19; 50:25-51:22; 57:6-58:4; Ex. 2, 2007 Federal Return at PHL/DAWE 1241.)[1] Nevertheless, for a fee, Dawe consented to allow third parties to procure a wagering contact on his life to be sold to stranger investor The GIII Accumulation Trust ("GIII"). (*See* Ex. 3, Application at 1–6; Ex. 4, GIII Check I; Ex. 5, GIII Check II.)

---

[1] The exhibits referenced herein are attached to the Declaration of Kendall Burr, the Affidavit of Scott Grandmont, and the Business Records Affidavit of Inland Community Bank, all filed concurrently herewith.

REDACTED

The broker who sold the policy, Susan Hammatt, along with her husband, helped procure the wagering contract on Dawe's life by funding the initial premium. The insurance application submitted to Phoenix misrepresented Dawe's true meager finances (*See* Ex. 3 at 1); Dawe could not afford the premiums (Macdonnell Depo. at 57:6-58:4.) The Hammatts, after obtaining an advance of their commissions from the brokerage general agent, funded the initial premium from a joint checking account secretly set up by Dawe and Ms. Hammatt. (*See* Ex. 9, March 26, 2007 Check; Ex. 10, March 26, 2007 Wire Transfer; Ex. 11, March 27, 2007 Check.) These funds were later reimbursed by GIII. (*See* Ex. 9; Ex. 10; Ex. 11.) REDACTED

Three years after this transaction, Dawe passed away. Upon receiving suspicious claims to the Policy's death benefits, Phoenix investigated and discovered the illicit nature of the transaction and filed this lawsuit seeking a declaratory judgment that the Policy is void *ab initio* for lack of an insurable interest. (*See* Compl., [D.I. 1]). The Trust filed counterclaims alleging

3

causes of action for breach of contract and bad faith against Phoenix.  (*See* Counterclaim, [D.I. 43]).

**B.  Summary of Hager's Alleged Expertise and Opinions**



REDACTED

4



### III.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  Fed. R. Civ. P. 702.  The Third Circuit has summarized these requirements as "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit."  *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000).  The party seeking to offer the expert testimony has the burden of

{00712628;v1}

proving the testimony's admissibility.  *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 n. 10 (1993).  The expert must explain how and why he has reached the conclusion being proffered and must have as a basis more than a subjective belief or speculation.  *See Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 144 (1997); *Kumho Tire Co., Ltd. v. Chemical,* 526 U.S. 137, 152 (1999).  "Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field."  *Watkins v. New Castle County*, 374 F. Supp. 2d 379, 391 (D. Del. 2005).  Further, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."  *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 153 (3d Cir.1999).  As illustrated below, this Court should exclude the opinions and testimony of William Hager because it does not meet the tests set out above, and the Trust cannot meet its burden to prove the testimony's admissibility.

## IV.   <u>ARGUMENT</u>

### A.   Hager States Opinions on Matters for Which He is Not a Qualified Expert

In order for a witness to testify as an expert, he must be qualified.  *See* Fed. R. Civ. P. 702.  "Expert testimony can only be received from someone who has specialized knowledge or training sufficient to qualify him to opine on an issue within his field of expertise, and the expert's opinion must be confined to that field."  *Watkins*, 374 F. Supp. 2d 392–913; *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 435 (D. Del. 2004).  Indeed, a judge must be persuaded that the alleged expert has knowledge or training in an area of specialized knowledge that is beyond an ordinary juror's abilities.  *Eaton Corp. v. Parker-Hannifin Corp.*, 292 F. Supp. 2d 555, 566 (D. Del. 2003).

### 1. Hager is Not Qualified to Give Opinions About Underwriting

REDACTED

However, Hager demonstrated in his deposition that he lacks the background, training, and knowledge to testify about Phoenix's underwriting of the Policy.

REDACTED Indeed, he has never been employed with a life insurance company. (*See* Ex. 16, Hager's CV). REDACTED

{00712628;v1}

REDACTED

*See City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) ("Though a proffered expert possesses knowledge as to a general field, the expert who lacks specific knowledge does not necessarily assist the jury.") (citing *Broadcort Capital Corp. v. Summa Medical Corp.*, 972 F.2d 1183, 1195 (10th Cir. 1992)).

Although Hager attempts to cobble together various positions and "responsibilities" that he believes constitutes his "experience", his report illustrates only that he oversaw the regulation of insurers and managed persons in fields unrelated to underwriting of life insurance. REDACTED

To allow Hager to stand as an expert in underwriting would contravene the purpose of Rule 702 and allow Hager, who has a tenuous connection with underwriting at best, to opine on topics for which he is not a qualified expert in this case.

### 2.    Hager is Not Qualified to Give Opinions on the Life Settlement Industry

Hager is not qualified to give testimony on the life settlement industry.  His report offers no indication that he has first-hand knowledge about the life settlement industry. REDACTED

8

REDACTED

██████████████████████████████████████████

Although Hager attempts to claim that all his "experience" in the "life insurance arena" qualifies him as an expert in the life settlement industry, such bold claims are not supported by his cited background.

REDACTED

██████████████████████████████████████████

Simply reading such materials does not give Hager "knowledge or training in an area of specialized knowledge that is beyond an ordinary juror's

9

abilities." *Eaton Corp.*, 292 F. Supp. 2d at 566.  Because Hager is not an expert in the life settlement market, he should not be permitted to opine that the transaction for the Policy was a legitimate use of insurance and not a STOLI scheme concealed from Phoenix.  Accordingly, this Court should prohibit Hager from opining about the benefits of the secondary market and/or Phoenix's alleged involvement in the secondary market.

**B.      Hager's Opinions Are Not Reliable**

An expert's testimony must be grounded in the procedures and methods of science and based on more than speculation.  *Daubert,* 509 U.S. at 591.  In other words, a court must assess whether the expert's methodology underlying his testimony is valid and can be appropriately applied to the facts at issue.  *Id*. at 592–93.  In conducting that examination, the court "must examine the expert's conclusions in order to determine whether they could reliably follow from the facts known to the expert and the methodology used."  *Heller,* 167 F.3d at 153.

In *General Electric Company v. Joiner*, the court recognized that "conclusions and methodology are not entirely distinct from one another."  522 U.S. at 146.  Exclusion is proper where "there is simply too great an analytical gap between the data and the opinion offered."  *Id*. Here, Hager's opinions are connected to the existing facts of the case by Hager's whim alone; when compared with the underlying facts, his opinions are not reliable.

**1.      Hager's Market Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions**

REDACTED

10

REDACTED

Given that he has no first-hand experience or background with the secondary market, merely reviewing documents and coming up with a conclusion based on those documents creates an analytical gap between the information in the documents and Hager's opinions.  *See Gen. Elec. Co.,* 522 U.S. at 146.

REDACTED

Ignoring the fact that he is not an underwriter expert, Hager did not even have a frame of reference within which to formulate an opinion.

In reaching his Market Opinions regarding Phoenix's supposedly "aggressive" efforts to issue insurance designed for resale in the life settlement market, Hager relied heavily on cherry-picked testimony from depositions offered in *other* cases by two Phoenix ex-employees, Ed Humphrey and James "Max" Labar.  Their hearsay testimony will not be admissible here, and while Hager may in theory be allowed to take such inadmissible evidence into account, the evidence reflects that he employed no reliable methodology in determining which portions of their testimony was credible, if any.  REDACTED

Hager further contends that Humphrey's increased sales and pay during that timeframe were based "almost solely" and "almost exclusively" on such policies sold in his region.  But

11

Humphrey offered testimony contradicting that characterization.  Humphrey confirmed that he repeatedly sent emails to his producers affirmatively articulating Phoenix's position on STOLI in 2006 and 2007.  (Ex. 18, Deposition of Edward Humphrey ("Humphrey Depo.") at 302:15-303:9; 341:5-342:22; 352:1-24; 356:1-357:13.)  Humphrey's own emails repeatedly advised his producers regarding what Phoenix considered acceptable business:

- Humphrey's emails emphasized the need for "quality life insurance" that required both an insurance need and insurable interest.  (*Id.* at 303:16-304:13.)

- Humphrey's emails conveyed the company's position that "stealth non-recourse," which he defined as a "quick sale and a quick settlement," was unacceptable business to Phoenix.  (*Id.* at 341:13-343:3; 344:4-345:7.)

- Following his email regarding stealth non-recourse, he spoke directly with his producers and brokerage general agents to reiterate Phoenix's position. (*Id.* at 343: 6-21.)

- Humphrey's emails emphasized that "stealth IOLI business," meaning policies procured for the "sole purpose of selling the coverage to an investor or other disinterested third party," was unacceptable.  (*Id.* at 352:18-354:4.)

In addition to affirmatively communicating Phoenix's position on STOLI, Humphrey also made clear that he never separately told producers or agents in his region that Phoenix would accept STOLI business:

- Humphrey explicitly denied having told any producer or BGA in 2006 or 2007 that Phoenix was interest in or willing to accept policies designed for resale. (*See id.* at 197:17-198:21.)

- Humphrey denied having told any producer that selling policies for the purpose of a settlement to third-party investors was acceptable business to Phoenix.  (*Id.* at 271:7-13.)

- Humphrey denied having told any of his producers in 2006 or 2007 that it was "okay to issue policies where there was no intent to keep the policy or the insured didn't want or need the policy at the time of application."  (*Id.* at 227:18-228:4.)

- Humphrey denied telling any producer in 2006 or 2007 that "quality life insurance for Phoenix did not require insurance need or insurable interest." (*Id.* at 304:24-305:11.)

- Humphrey denied having told any of his producers that Phoenix would accept a policy if the insured was given a financial inducement by a third party. (*Id.* at 226:5-227:13.)

- Humphrey confirmed that he did *not*, as alleged in the case in which he was deposed, tell two agents, Steven Lockwood and Marvin Meyer, that Phoenix would accept STOLI business anyway. To the contrary, he testified that Lockwood confirmed to him that he was not involved in such business, and that Meyer said he was "insulted by the question." (*Id.* at 343:6-344:3.)

- Humphrey could not identify a single other Phoenix Wealth Management Consultant as having ever told producers or agents that Phoenix would be willing to issue STOLI business. (*Id.* at 198:22-206:6.)

This testimony shows that even Humphrey, whose testimony forms the basis of Hager's supposed expertise on Phoenix's desire for STOLI, conceded that Phoenix's position on STOLI was made very clear to producers and agents, and not just for public show. Hager did not mention these communications or denials in his report, and offers no explanation as to how he could have reliably relied on Humphrey's testimony for only those portions he deemed supportive of his analysis and yet inexplicably ignored those portions that undermined his analysis.

Hager also relies heavily on the testimony of Labar, who filed a lawsuit accusing Phoenix of having terminated him in retaliation because he was a "whistleblower" who had reported to state departments that other Phoenix employees were marketing life insurance policies to individuals lacking an insurable interest in the life of the insured. *Labar v. Phoenix Life Ins. Co.*, Case No. 08-CIV-1278 (D. Ore.), D.I. 50 at ¶¶ 5, 8-11. Importantly, however, the District of Oregon *granted* Phoenix's motion for summary judgment dismissing his claims. *Labar*, Case No. 08-CIV-1278, D.I. 63. Hager inexplicably did not consider the publicly-available testimony

filed in that case, in which Labar admitted under oath that the state agencies in Oregon and California found no legal basis to take action regarding his complaints regarding STOLI. *Labar*, Case No. 08-CIV-1278, D.I. 36-1, Exhibit 1, Labar testimony (portions of the transcript, including additional portions not attached to that filing, are attached as Ex. 19) at 356:7-359:24. Labar further admitted that he did not meet his performance obligations; in fact, when his supervisor gave him higher performance goals, he deliberately refused to submit business he could have submitted.  (*Id*. at 269:1-270:22.)  Labar's testimony makes clear that he had no factual basis for his vague accusations that Phoenix sales personnel were knowingly marketing policies destined for resale to investors, as he could not identify a single case, policy, application, misrepresentation, or other evidence supporting his claims, which were based entirely on hearsay.  (*Id*. at 206:19-209:15; 221:22-223:17.)

Hager's analysis is unreliable as it inexplicitly overlooks Labar's obvious inherent bias as a terminated ex-employee seeking money from his former employer.  Indeed, Labar sought not only damages but also $750,000 in noneconomic damages from Phoenix.  (*Id*. at 120:25-121:9.)  Nor did Hager employ any methodology whatsoever, let alone a reliable one, to analyze the credibility of Labar's testimony given that the District of Oregon, after being presented with his testimony and other evidence, dismissed Labar's claims on summary judgment.



REDACTED

His methodology is once again fatally flawed, as he gives no explanation as to how the numbers support his conclusions. *See Gen. Elec. Co.*, 522 U.S. at 146.  REDACTED

His conclusions

14

regarding Phoenix's supposed *intent* does not "reliably follow from the facts known to the expert and the methodology used." *Heller*, 167 F.3d at 153. The Court should therefore exclude Hager's alleged Market Opinions as based on flawed methodology and poor factual foundation.

> 2. **Hager's Transaction Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions**

Hager's Transaction Opinions are flawed in that Hager selectively considered various documents and facts rather than looking at the transaction in its entirety in making his opinions.

REDACTED

Indeed, analyzing the purpose for insurance is crucial to a legitimate insurance transaction. *See Comm'r v. Le Gierse*, 312 U.S. 531, 539 (1941) ("actual 'insurance risk'" must exist and "risk shifting and risk-distributing are essential").

REDACTED

The use of this fraud concealed the illegitimate nature of the transaction from Phoenix, and misled Phoenix in representing that Dawe would pay premiums himself, so Hager's choice to ignore that aspect of the transaction is convenient. REDACTED

15

REDACTED Hager's reports cherry-pick the information that is favorable to the Trust and its position, and Hager simply ignores the facts and documents that contradict his own conclusions. Coupled with his utter lack of expertise in the secondary market, Hager's opinions cannot stand.

### 3.   Hager's Bad Faith Opinions Lack Proper Factual Foundation, and He Fails to Employ Sound Methodology in Reaching His Conclusions



REDACTED

Hager's Bad Faith Opinions are patently flawed and lack reasoned explanation or methodology as to what information an insurer *can* use to deny a claim, if at all.  This Court should exclude Hager's Bad Faith Opinions.

### C.   Hager's Opinions Do Not Assist the Trier of Fact

Rule 702 requires that an expert may testify only if there is sufficient "fit"—his expertise "will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Civ. P. 702; *see U.S. v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (discussing the third requirement to Rule 702).  "Put another way, this is a question of relevance, and 'Rule 702, which governs the admissibility of expert testimony, has a liberal policy of admissibility' if it has the 'potential for assisting the trier of fact.' *Schiff*, 602 F.3d at 173 (citing *Kannankeril v. Terminix Int'l, Inc.*

128 F.3d 802, 806 (3d Cir. 1997) (citation omitted).  Hager's opinions are not relevant because they involve questions of law that are for the Court alone to decide, involve facts that have no bearing to the issues in this case, and invade the province of the fact finder.  Thus, the opinion and testimony must be excluded.

### 1.    Hager's Market Opinions Improperly Opine as to Phoenix's Intent

A key flaw in Hager's Market Opinions is his repeated endeavor to extrapolate what Phoenix's *intended* and *knew*, based on his reading of documents.  Such opinions will not "assist the trier of fact to understand the evidence" (Fed. R. Civ. Pr. 702), as Hager has no expertise in matters relevant to interpreting what Phoenix intended.

Hager's expert opinions were excluded for this very reason in *Old Line Life Insurance Company v. Brooks*, Civ. No. 05-722 DPJ-JCS, 2007 WL 892448 (S.D. Miss. 2007).  There, the Court found, Hager "possesses no specialized knowledge that places him in a position to assist the jury in determining what [the insured] was thinking."  *Id.* at *9 (citing *Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 410 F. Supp. 2d 417, 423 (W.D. Pa. 2006) ("An expert simply is not in any better position than the [factfinder] to assess another's subjective intent."); *Ass's Ben. Servs., Inc. v. AdvancePCS Holding Corp.*, No. 04 C 3271, 2005 WL 2335484, *4 (N.D. Ill. Sept. 23, 2005) (party's intent is within province of the finder of fact); *Steadfast Ins. Co. v. Auto Mktg. Network, Inc.*, No. 97 C 5696, 2004 WL 783356, at *6 (N.D. Ill. Jan. 28, 2004) (same); *Aerotech Resources, Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 474296, at *2 (D. Kan. Apr. 4, 2001) (striking expert's testimony regarding parties'' intent in entering into a contract); *Tasch, Inc. v. Sabine Offshore Serv., Inc.*, No. 97-15901 JAB, 1999 WL 596261 (E.D. La. 1999) (same).  Thus, to the extent that Hager seeks to use other materials – largely, the inadmissible hearsay testimony of Humphrey and Labar, as well as other public materials

capable of interpretation by the Court – to opine as to what Phoenix *intended*, his testimony and report should be excluded as unhelpful to this Court as the trier of fact.

### 2.      Hager's Opinions Are Improper Legal Conclusions

REDACTED

Hager's intentions are to impute any alleged wrongdoing on the part of the brokers onto Phoenix and taint Phoenix in the process.  This Court should see through Hager's feeble attempt to provide this Court with a legal conclusion.  Indeed, the federal evidentiary rules do not allow an expert to testify as to a legal conclusion.  *Transportes Aereos Pesago, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 533 (D. Del. 2009); *Proctor & Gamble, Co. v. Teva Pharm. USA, Inc.*, No. Civ.A 04-940-JJF, 2006 WL 2241018, at * 1 (D. Del. Aug. 4, 2006). Consequently, the Court should prohibit Hager from offering his conclusory opinions about Phoenix's alleged responsibility for the acts of its brokers.

### 3.      Hager's Opinions Are Flawed Because They Rely on Irrelevant "Facts"

REDACTED

The documents and other support Hager cites are outside the timeframe in which the Policy was issued—indeed, over one year later—and do not involve the Dawe Policy.  REDACTED

REDACTED

As such, his characterization of Phoenix's activities as "aggressive" is purely inflammatory, based on no helpful or reliable facts, and, ultimately, irrelevant to this case because they will not assist the trier of fact. *See Schiff*, 602 F.3d at 173.

## V.       CONCLUSION

For the reasons stated above, Plaintiff PHL Variable Insurance Company respectfully requests that the Court grant this Motion and exclude any and all opinions and testimony by William D. Hager from being admitted at trial.  Phoenix further requests that the Court grant such other and further relief to which Phoenix may be justly entitled.

ASHBY & GEDDES

*/s/ Tiffany Geyer Lydon*
_____
Richard D. Heins (I.D. #3000)
Tiffany Geyer Lydon (I.D. #3950)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
rheins@ashby-geddes.com
tlydon@ashby-geddes.com

-and-

19

Thomas F.A. Hetherington
Jarrett E. Ganer
Kendall Burr
EDISON, McDOWELL &
    HETHERINGTON LLP
Phoenix Tower
3200 Southwest Freeway, Suite 2100
Houston, Texas 77027
(713) 337-5580

*Attorneys for Plaintiff*
*PHL Variable Insurance Company*

Dated:  January 22, 2013