IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| PHL VARIABLE INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 10-964-RGA |
| | : | |
| PRICE DAWE 2006 INSURANCE TRUST, et al., | : | |
| | : | |
| Defendant. | : | |

## ORDER

Before the Court are three motions to exclude expert testimony. (D.I. 161, 164, 169).

The case is scheduled for a seven-day bench trial on June 3, 2013.[1]  It is a STOLI trial.

Federal Rule of Evidence 702 states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

The Court of Appeals has explained:

Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit. Qualification refers to the requirement that the witness possess specialized expertise. We have interpreted this requirement liberally, holding that "a broad range of knowledge, skills, and training qualify an expert." Secondly, the testimony must be reliable; it "must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for

---

[1] It is clear to me that I have allowed way too much time for this trial.  I am thinking that three seven-hour trial days would be more than enough. The amount of time to be allowed, and the exact schedule (which might include a week's delay in the trial) will be discussed at the pretrial conference.

his on her belief. In sum, *Daubert* holds that an inquiry into the reliability of scientific evidence under Rule 702 requires a determination as to its scientific validity." Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact. The Supreme Court explained in *Daubert* that "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility."

By means of a so-called "*Daubert* hearing," the district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury. *See Daubert* ("Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a) [of the Federal Rules of Evidence] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.").

*Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404-05 (3d Cir. 2003).

I have reviewed the Complaint and the Answer. (D.I. 1, 43). The Plaintiff's claim is that the insurance policy is void for lack of an insurable interest at a particular moment in time, which might be March 26-27, 2007, and therefore it does not have to pay the death benefit. The Defendant[2] states that there was an insurable interest, and therefore the failure to pay is a breach of contract. (D.I. 1, ¶ 30; D.I. 43, Answer ¶ 30; Counterclaim ¶¶ 133-42, D.I. 48). The Defendant also asserts that the Plaintiff's failure to pay on the policy is a "breach of the duty of good faith" which occurred in the June to November 2010 time period. (D.I. 43, Counterclaim ¶¶ 124-25, 149-56). There appear to be two main substantive issues for decision. The first is the intensely factual issue about the circumstances of the life insurance application leading up to the issuance of the policy. It appears that a contested factual issue will be who (in reality, as opposed to in form) paid for the policy. The second is also a factual issue, about which one might expect there to be a clearer paper trail, concerning the Plaintiff's decision not to pay on the

---

[2] By Defendant, I refer to the Price Dawe 2006 Insurance Trust. There is a second defendant, about which there are other pending motions.

policy.

One motion to exclude relates to Dr. Harold Skipper. (D.I. 161). The Plaintiff, who

proposes to call Dr. Skipper as a witness, sums up his proposed testimony as, "conclusions drawn

from the evidence [that] the [subject life insurance] policy was not a legitimate insurance

transaction procured to benefit someone with an insurable interest in [the insured's] life and

mitigate against negative consequences of early death but, rather, a mere wagering contract with

no economic or public policy justification." (D.I. 201, p.2). Dr. Skipper is undoubtedly an

expert, but as his report makes clear (D.I. 163), his proposed testimony is mostly a factual

analysis of the evidence, that is, the same determination that I will need to make as a fact-finder.

I do not think it will be helpful. If the topic were quantum physics, I would want all the help I

can get. On the other hand, what is a false statement or a fraud is something I, like most people,

am perfectly capable of figuring out based on the underlying facts that are proven. I do not think

his testimony will assist the trier of fact, *see* Fed. R. Evid. 702(a), and it will therefore be

excluded.

A second motion to exclude relates to Steve Burgess. (D.I. 164). The Defendant, who

proposes calling Mr. Burgess as a witness, seeks to have him testify that "(1) the life settlement

market allows insureds to legitimately utilize insurance as an investment; (2) Price Jefferson

Dawe, on his own accord, procured insurance from Phoenix and then sold an interest in the trust

that owned the insurance policy; (3) Phoenix's business practices included actively soliciting

large insurance policies to seniors knowing that these policies would be resold on the secondary

market; and (4) Phoenix had lax underwriting, both generally and in underwriting the life

insurance policy at issue in this case." (D.I. 165, p.1 (Plaintiff's summary); *see also* D.I. 205, p.5

(Defendant's not significantly different summary)). It is not so clear whether Mr. Burgess is an

expert in all the subjects about which he offers an opinion, for example, underwriting. His report

(D.I. 167 at 90-98) states his opinions. The second opinion suffers from the same problems as

does Dr. Skipper's. In my opinion, stated at a general level, Mr. Burgess's first point is not in

dispute, the third point is also likely not in dispute (and is irrelevant, but if it were relevant, could

surely be proved with fact testimony), and the fourth point is irrelevant. Thus, even assuming

Mr. Burgess is an expert on all of the topics about which he offers opinions, his testimony too

would not be helpful to the trier of fact, and therefore will be excluded.

The third motion to exclude relates to William Hager.[3] (D.I. 169). As summarized by the

proponent of his testimony, he has three opinions: (1) testimony about the secondary market; (2)

"This transaction was legitimate and fit within PHL's own business practices and strategies;" and

(3) "PHL's bad faith with respect to the claim for benefits under the policy." (D.I. 203 at p.5).

There is nothing in the first two opinions that appears to be helpful to me as the trier of fact. In

regard to the third opinion, I have read Mr. Hager's report. (D.I. 172, at 163-67). It consists of

various factual recitations with the conclusion that the facts show bad faith. Mr. Hager is, among

other things, a lawyer. I think I am perfectly capable, if the underlying facts are proven, of

concluding what constitutes bad faith or not. Thus, I do not think his testimony on this point

either would be helpful.

The Court is quite certain that it does not want "expert" testimony along the lines

proffered that in any way offers opinions about what Price Dawe and the people with whom he

was interacting during the relevant time period did, knew, believed, or intended. I will decide

that. I also have trouble seeing how testimony about what sort of company the Plaintiff was and

---

[3] Mr. Hager is an elected official whose public position involves insurance regulation and who consults on the same or related issues. (D.I. 203, p.4).

how generally it was run is relevant. Proving that the Plaintiff was greedy or in desperate

financial trouble at any given point is so remotely related to the factual issues actually in dispute

as to be irrelevant.

All the above being said, the Court has not had the benefit of the pretrial order and the

pretrial conference, and may not fully understand the issues in dispute. Thus, to the extent any

party believes that any of the purported testimony about the insurance industry generally, say, for

example, the economics of the insurance industry, and/or how the secondary market operates, is

important to the decision in this case, the Court orders that the party submit a proffer (not to

exceed fifteen double-spaced pages) of its proposed expert testimony, within two weeks of the

date of this order. Separately, if any party thinks there is something important in the various

reports of the excluded experts, which would actually assist the trier of fact on issues in dispute,

the party may submit a proffer, with a brief explaining why it would be an abuse of discretion to

exclude the testimony. Any party disputing any proffer of the first sort shall submit a response

specifying the disputed points and the reasons for the disputes within one week. The Court

would be inclined to accept any undisputed matters as being stipulated facts for the purposes of

any decision.

Thus, the Court **GRANTS** the three motions to exclude (D.I. 161, 164, 169), with leave

to renew as set forth above. IT IS SO ORDERED this 10 day of April 2013,

United States District Judge